PATRICIA ANN EATINGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eatinger v. Commissioner
Docket No. 16564-89
United States Tax Court
T.C. Memo 1990-310; 1990 Tax Ct. Memo LEXIS 328; 59 T.C.M. (CCH) 954; T.C.M. (RIA) 90310; June 20, 1990, Filed *328 Decision will be entered for the respondent. Robert J. Eatinger, Jr., for the petitioner. Thomas A. Dombrowski, for the respondent. DAWSON, Judge. DAWSON
MEMORANDUM OPINION Respondent determined a deficiency of $ 1,235 in petitioner's Federal income tax for 1985. In his notice of deficiency dated April 12, 1989, respondent included in petitioner's gross income as additional alimony the amount of $ 9,790 received as her portion of her former husband's military retirement pay or, alternatively, that such amount constituted taxable pension income to petitioner. Respondent has conceded in his reply brief that the military retirement income payments received by petitioner in 1985 were not alimony. Thus, the only issue for decision is whether the $ 9,790 received by petitioner in 1985 for her share of her former husband's military retirement income, which was paid to her pursuant to an Order of the Superior Court for San Bernardino County, California, was taxable income to her. All of the facts are stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. The pertinent facts are summarized below. Patricia Ann Eatinger *329 (petitioner) resided in Highland, California, when she filed her petition in this case. Petitioner married Robert Joseph Eatinger (Lt. Col. Eatinger) in Illinois on May 14, 1955. During their marriage they lived in various community property and non-community property states before finally settling in California. [1]
Lt. Col. Eatinger served on active duty in the United States Air Force Reserve from January 1952 until his retirement on May 31, 1972. When he retired he was entitled to retirement pay based upon 20 years of active service. In 1977, petitioner and Lt. Col. Eatinger divorced pursuant to the laws of California. On March 28, 1977, and incident to their divorce, the Superior Court for San Bernardino County, California, issued an Order for Custody of Children, Visitation, Child Support, Spousal Support, Division of Community Property and Obligations and Attorney *330 Fees, which, in relevant part, provided as follows: 7. Respondent [petitioner] is awarded as her sole and separate property: * * * (h) 42-1/2% of petitioner's [Lt. Col. Eatinger's] military retirement income, being $ 401.00 per month, commencing payments on April 1, 1977. * * * 10. Petitioner's [Lt. Col. Eatinger's] military retirement income shall be shared between petitioner [Lt. Col. Eatinger] and respondent [petitioner] as provided herein. The deductions from said retirement include premium payments on respondent's [petitioner's] survivor benefit plan and life insurance policy premium on the lives of petitioner [Lt. Col. Eatinger] and respondent [petitioner]. These deductions shall continue until the emancipation or majority of the minors as regards their beneficiary status. On July 28, 1981, the above court order was modified by an Order to Show Cause Hearing Minute Order, which, in relevant part, provided: The Court finds Respondent [petitioner] is entitled to receive 42-1/2% of Petitioner's [Lt. Col. Eatinger's] military retirement from the date of the Interlocutory Decree; less amounts of Respondent's [petitioner's] taxes paid by Petitioner [Lt. Col. Eatinger] from the *331 date of said judgment. Arrears to include interest at the legal rate from the date due and principal and interest are to be paid at $ 100.00 per month and continuing to bear interest at the legal rate commencing September 1, 1981, payable 1/2 on the 1st and 1/2 on the 15th.
On his 1985 Federal income tax return Lt. Col. Eatinger reported the $ 23,041 retirement pay he received during 1985, and which was shown on the Form W-2P, Statement for Recipients of Annuities, Pensions, Retired Pay, or IRA Payments, issued to him. However, he reduced his taxable income by the total amount paid to petitioner in 1985, as follows: [2]
Breakdown of Payments to Petitioner
Alimony
Mil. Ret.
[3] Arrears
Total
Month Total [4]
$   300 $   718   $   100 $  1,118
Year Total
3,600 8,612   1,200 13,412
During 1985, Lt. Col. Eatinger paid petitioner the *332 amounts due her by sending her checks twice each month. Petitioner neither requested nor received payments directly from the United States Air Force, or from any other agency or department of the United States Government, for any amounts representing the 42-1/2 percent, or any other portion, of Lt. Col. Eatinger's military retirement pay. Petitioner files her Federal income tax returns on the cash receipts and disbursements method of computing income. On her Federal income tax return for 1985 petitioner reported only the $ 3,600 alimony received in that year. In his notice of deficiency respondent increased petitioner's income by $ 9,790, which was her share of Lt. Col. Eatinger's military retirement income received pursuant to the Order of the Superior Court for San Bernardino County, California. Petitioner contends that the amounts she received as her share of her former husband's military retirement pay pursuant to the provisions of the divorce decree constitute a transfer of property due her when the marriage was dissolved, and that such transfer of property is not taxable income to her under section 61 of the Code. [5] To the contrary, respondent contends that petitioner's share *333 of her former husband's military retirement pay received in 1985 represents taxable pension income. We agree with respondent. The general rule of section 61(a) is that, except as otherwise provided by law, gross income includes all income from whatever source derived. Gross income includes pensions. Sec. 61(a)(11). A military retirement pension, like other pensions, is simply a right to receive a future income stream from the retiree's employer. It is a settled principle that Federal law controls how income from property interests will be taxed even though the property interests are created and controlled by state law. United States v. Mitchell, 403 U.S. 190 (1971); Schottenstein v. Commissioner, 75 T.C. 451, 460 (1980). It is also settled law that income from property is taxed to the owner thereof. Helvering v. Clifford, 309 U.S. 331 (1940); Blair v. Commissioner, 300 U.S. 5 (1937); Poe v. Seaborn, 282 U.S. 101 (1930); Lucas v. Earl, 281 U.S. 111 (1930).Here the property interest petitioner received incident to the divorce in 1977 was evaluated by the Superior Court *334 under California community property law to determine the nature of her ownership interest.[6] *335 If the payments she received in 1985 represent income, the income tax consequences necessarily follow ownership. We look to the decisions of the relevant state's highest court to determine state law regarding property ownership and the nature of the property interest created. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). Although the Supreme Court of California has in the past encouraged trial courts, if feasible, to award all pension rights to the employee spouse, compensating the nonemployee spouse with other community property of equal value, the awarding of the community's pension to the employee spouse is not an absolute requirement. In re Marriage of Gillmore, 29 Cal.3d 418, 428; 629 P.2d 1, 7 (1981).Trial courts have considerable discretion to value and divide community property. This discretion is limited only by the statutory requirement that all community property be divided equally. In re Marriage of Gillmore, 29 Cal.3d at 423; Cal. Civ. Code, sec. 4800 (West 1982). There is no entitlement to in-kind distributions of community property. See, e.g., In re Marriage of Fink, 25 Cal.3d 877; *336 603 P.2d 881 (1980).However, once the community portions are separated the employee spouse may "buy out" the nonemployee spouse. In re Marriage of Gillmore, supra.
Under California law a retirement pension represents deferred compensation for past employment and is not a gift from the employer. In re Marriage of Brown, 15 Cal.3d 838, 845; 544 P.2d 561, 565, (1976); Inre Marriage of Fithian, 10 Cal.3d 592, 596; 517 P.2d 449, 451 (1974).Also, "a spouse's entitlement to a share of the community property arises at the time that the property is acquired. (Civ.Code, secs. 5107, 5108, 5110.) That interest is not altered except by judicial decree or an agreement between the parties." Henn v. Henn, 26 Cal.3d 323, 330, 605 P.2d 10, 13 (1980). Petitioner was married 17 of the 20 years her former husband spent in military service. Thus 85 percent of the retirement pension earned was community property subject to division. Her community portion was one-half or 42.5 percent of the retirement pension. As a "property settlement" incident to her divorce, petitioner was awarded, as her sole and separate property, 42-1/2 percent of her former husband's military retirement pension (less survivor *337 benefit premiums and life insurance premiums on the lives of Lt. Col. Eatinger and petitioner). In 1981, petitioner sought and received a modification of the prior Order which also required her former husband to pay the arrearages in past payments, less income taxes, attributable to the pension. It is clear that California courts have considerable discretion to partition community assets limited only by the requirement that the community be divided equally. Even though petitioner neither requested nor received payment directly from the United States Air Force [7] or any other agency of the United States Government, she was entitled to the community property portion of Lt. Col. Eatinger's military retirement pension pursuant to California law. That interest was not modified by court order. We reject petitioner's *338 argument that the court-ordered division of community assets (here the retirement pay) did not result in an entitlement to income. The Air Force paid retirement benefits (the "property asset" here in issue) to Lt. Col. Eatinger from the time he retired in 1972 until his marriage to petitioner was dissolved in 1977 and thereafter. Certainly the retirement payments received from 1972 to 1977 resulted in the receipt of taxable income by the marital community. The parties do not dispute that the Eatingers' right to collect the military retirement pension was a community asset subject to division by the California courts. Here the Superior Court for San Bernardino County computed the community's interest in the pension and awarded both spouses their respective shares. We also reject petitioner's argument that the court-ordered division of this particular community property income changed the character of the payments from "income" to "property" as a result of the divorce. This argument ignores the clear directive of the California Superior Court in its order dividing the community property. The Court ordered that the "military retirement income shall be shared between [the parties]. *339 " It further ordered that petitioner be awarded 42-1/2 percent of the military retirement income as her sole and separate property. Petitioner seemingly argues that she was awarded the present value of her community property share of the military pension benefits and, therefore, the monthly payments she received constitute a recovery of basis. We note, however, that the Order partitioning the community property does not provide a lump sum (i.e., the present value of the pension) to be satisfied in installments. But even if we were persuaded, which we are not, that a portion of the monthly payments is to be applied against her basis in the pension, that basis is zero, and the portion applied against basis nevertheless represents income. Petitioner raises other arguments premised on the assertion that California law requires trial courts in marriage dissolution proceedings to award pension benefits to the employee spouse, compensating the nonemployee spouse with other community assets. We disagree. We do not find this to be the law in California. Petitioner contends that to tax her on her share of her former husband's military retirement pension violates her rights to equal protection *340 of the law under the Due Process Clause of the Fifth Amendment to the Constitution of the United States. This contention is based on a faulty premise and the arguments are not persuasive. Accordingly, we hold that petitioner's share of her former husband's military retirement pay received by her in 1985 pursuant to the California divorce decree was taxable as pension income. See and compare Bagur v. Commissioner, 66 T.C. 817, 823 (1976), remanded on another issue 603 F.2d 491 (5th Cir. 1979); Denbow v. Commissioner, T.C. Memo. 1989-92; and Lowe v. Commissioner, T.C. Memo. 1981-350. For the first time in her reply brief petitioner claims that if her share of her former husband's military retirement pay is taxable income, then she is entitled to a credit for taxes withheld from her share. The Form W-2P issued to Lt. Col. Eatinger for 1985 shows that he received $ 23,040.72 and that $ 2,595.12 in Federal income tax was withheld. Petitioner asserts that her share of the withheld amount is $ 1,102.93, which is 42-1/2 percent of $ 2,595.12. We are unable to consider petitioner's claim for a section 31 credit because such credit does not enter into the computation of deficiencies determined *341 under sections 6211(a) and 6211(b)(1). Redcay v. Commissioner, 12 T.C. 806, 809-810 (1949); Kasey v. Commissioner, T.C. Memo. 1976-266; and McKinnon v. Commissioner, T.C. Memo. 1982-229. Moreover, we note that Title 10, United States Code section 1408(c)(1) (1982), provides that a court may treat "disposable retired or retainer pay" of military personnel either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. Disposable retired or retainer pay is, by definition, net of income taxes. Title 10, United States Code, section 1408(a)(4)(C) (1982); and Mansell v. Mansell, 490 U.S. , 109 S.Ct. 2023 (1989). Because, in our view, a court's authority under section 1408(c)(1) to divide a community military retirement pension is limited to the amount that is net of income taxes, all income tax withheld is attributable to the service member spouse. If petitioner has any remedies with respect to a credit for withholding taxes, they lie elsewhere. There is a discrepancy in the amount of underreported income ($ 9,790) stated in the deficiency notice and the amount stipulated ($ 9,812) by the parties as received *342 by petitioner. This is not explained by the record. However, because respondent did not request an increase in the amount of deficiency as required under section 6214(a), he is bound by the amount stated in his notice of deficiency. Estate of Petschek v. Commissioner, 81 T.C. 260, 272 (1983) affd. 738 F.2d 67 (2d Cir. 1984). To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. During their marriage petitioner and Lt. Col. Eatinger lived in Maine (5/55 - 7/56), Georgia (7/56 - 3/57), Texas (3/57 - 9/57), Arizona (9/57 - 12/57), England (2/58 - 3/59), France (3/59 - 12/59), Germany (12/59 - 5/61), Louisiana (5/61 - 7/63), Kansas (7/63 - 12/65), Arizona (1/66 - 7/68), and California (7/68 - 3/77).↩
2. Lt. Col. Eatinger also paid petitioner additional amounts pursuant to the order for child support. ↩
3. The column entitled "Arrears" denotes back payments due on petitioner's community property interest in Lt. Col. Eatinger's military retirement pay plus interest. ↩
4. The military retirement pay received in January was $ 714. The amount received for all other months was $ 718.↩
5. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
6. In McCarty v. McCarty, 453 U.S. 210 (1981), the Supreme Court held that the Federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property. Noting the distressed plight of many former spouses of military members, the Supreme Court observed that Congress was free to change the statutory framework. In a prompt and direct response to McCarty, Congress enacted in 1982 the Uniformed Services Former Spouses' Protection Act, which authorizes state courts to treat "disposable retired or retainer pay" as community property. 10 U.S.C. sec. 1408(c)(1) (1982). "Disposable retired or retainer pay" is defined as "the total monthly retired or retainer pay to which a military member is entitled" less certain amounts, such as properly withheld Federal income taxes. Here the initial order (March 28, 1977) of the Superior Court for San Bernardino County predated the McCarty decision. Congress obviously sought to change the legal landscape created by the McCarty decision when it chose June 25, 1981, the day before McCarty was decided, as the applicable date for some of the Act's provisions. 10 U.S.C. sec. 1408(c)(1)↩.
7. Title 10, United States Code, section 1408↩, provides a mechanism for former spouses of service personnel to receive court-ordered alimony, child support, and property settlement payments sent directly to them from the military finance center. However, this mechanism did not come into effect until the enactment of the Uniformed Services Former Spouses' Protection Act in 1982.