**EMPLOYEES SAVINGS PLAN OF MOBIL OIL CORPORATION, Plaintiff,**

v.

**Elayne Hardison GEER, John T. Geer, Jr., and Elizabeth Ann Geer Block, Defendants.**

**No. 81 Civ. 4537 (LBS).**

United States District Court, S. D. New York.

March 17, 1982.

As Modified March 18, 1982.

Patterson, Belknap, Webb & Tyler, Arthur H. Kroll, Yale D. Tauber, Gregory L. Diskant, Michael Jacobster, Susan U. Douglass, Louis Hering, Asst. Gen. Counsel, Vance J. Anderson, Employee Relations Counsel, New York City, for plaintiff.

Stillman & Schwartz, Kenneth M. Stillman, Dallas, Tex., for defendant Elayne Hardison Geer, Jr.

Donald Portland, New York City, for defendants John T. Geer, Jr. and Elizabeth Ann Geer Block.

## OPINION

SAND, District Judge.

The issue presented on plaintiff's motion for summary judgment is whether the Em-

---

ployee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. § 1001 *et seq.*, preempts community property law insofar as it affects the distribution of an interest in a pension plan after the death of the employee participant.

The trustee of the Employees Savings Plan of Mobil Oil Corporation ("Mobil"), an employee benefit plan within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3), has instituted this action for declaratory judgment to resolve the conflict that has arisen between the beneficiary designation made by the employee participant, John T. Geer, pursuant to the plan, and the state law community property rights asserted by his widow, Elayne Hardison Geer. Under the terms of the plan, Mr. Geer filed a form that designated who should receive his interest in the plan after his death. The beneficiary designation in force at the time of Mr. Geer's death directed that fifty percent of his interest be distributed to Mrs. Geer, and that twenty-five percent be distributed to each of his two children (by a previous marriage), John T. Geer, Jr., and Elizabeth Ann Geer Block. At the time of his death, Mr. Geer's fully vested interest in the plan was $555,241.70. The beneficiary designation represented Mr. Geer's only provision for his children; he devised by will all his property other than the interest in the plan to Mrs. Geer. Mobil, citing the broad preemptive reach of ERISA, asserts that the fund should be distributed according to Mr. Geer's designation.

Mrs. Geer asserts that ERISA does not preempt state community property law and that therefore, the fund should be distributed in accordance with community property principles. Mrs. Geer alleges that she and Mr. Geer entered into a common law marriage in January, 1975 while they were domiciled in Texas, a community property state. Subsequently, following transfers by Mobil, the Geers lived in Connecticut, Norway, Indonesia, and again, Texas. They formalized their marriage in December, 1975 in Connecticut. Mr. Geer died in Texas, while on a company-approved sick leave.

Mrs. Geer claims that, by virtue of her contribution to the marital community, she is entitled to one-half of any interest that Mr. Geer acquired in the plan after their marriage and while the couple was domiciled in a community property jurisdiction. Under this theory, the amount remaining after the segregation of Mrs. Geer's community property would be distributed according to Mr. Geer's designation. Mrs. Geer would then receive fifty percent of this amount pursuant to Mr. Geer's beneficiary designation.

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), "has preempted the regulatory field for plans within its scope." *Delta Air Lines, Inc. v. Kramarsky*, 666 F.2d 21, (2d Cir. 1981). It preempts "any and all State laws insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Section 514(a) preempts both state laws that directly regulate such plans and those that "ostensibly regulate[ ] a matter quite different from [employee benefit] plans" but impose a requirement on employee benefit plans that eliminates a choice that Congress intended to preserve. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (state law barring pension benefit offsets based on worker's compensation preempted by ERISA because Congress intended to preserve this choice for employer-employee bargaining). *See Delta Air Lines, Inc., v. Kramarsky*, 666 F.2d 21 (2d Cir. 1981) (state law requiring disability plans to include pregnancy-related disability preempted because Congress intended to reserve this matter to private choice). The preemptive reach of § 514(a) does not, however, extend to state laws that only remotely "touch upon" pension plans. *American Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 121 (2d Cir. 1979).

In *Merry*, the Second Circuit rejected the contention that § 514(a) preempted a state court order garnisheeing pension payments to satisfy the support obligations of a divorced spouse. The court observed that to

construe § 514(a) to extend to this order[1] "would necessarily lead to the unreasonable conclusion that Congress intended to preempt even those state laws that only in the most remote and peripheral manner touch upon pension plans." 592 F.2d at 121 (*citing Stone v. Stone*, 450 F.Supp. 919, 932 (N.D.Cal.1978), *aff'd*, 632 F.2d 740 (9th Cir. 1980), *cert. denied sub nom. Seafarers Int'l Union v. Stone*, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981)). Reference to the *Stone* case cited by the court reveals that the kind of state laws it viewed as "remote and peripheral" were state community property laws. In *Stone*, the divorced wife of a participant in an ERISA-governed plan sought to enforce a state law divorce decree which had awarded her a 40 percent interest in her husband's pension.[2] The court found that despite its "broad preemptive effect," § 514(a) was not "designed to preempt any state law with even the most tangential relation to ERISA." 450 F.Supp. at 932. It found state community property laws within the "narrow category of laws which affect employee benefit plans but which do not relate to them within the meaning of § 514(a)." *Id.* As the *Stone* court noted, the subject of domestic relations is the province of state law, and the courts, therefore, in construing legislative intent, will not find federal preemption " ' "unless that was the clear and manifest purpose of Congress." ' " *Id.* at 925 (*citing Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), *quoted in Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978)). Following this principle of construction, the *Stone* court found no preemption of state community property laws. 450 F.Supp. at 932.

The court went on to cite a second reason for its conclusion that it should distinguish community property laws from state laws that attempt to increase benefits to employees through direct or indirect regulation of ERISA plans. Nonworking spouses, unlike employees who might bargain for increased benefits, are incapable of protecting the interests that the state has addressed in enacting community property laws. *Id.* at 932–33. And, since these interests are peculiarly within the domain of state law, the court cannot assume that Congress has considered these interests and chosen to override them. The conclusion that Congress has reserved an area to private choice, reasonable in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), and *Delta Air Lines Inc. v. Kramarsky*, 666 F.2d 21 (2d Cir. 1981), would be unsound in the area of community property law.

In deciding this motion for summary judgment, the Court must determine whether Congress intended § 514(a) to include community property law, insofar as it would require the distribution of a share of a deceased participant's vested interest in an ERISA plan to the participant's spouse. The Court finds this provision of state community property law not preempted by ERISA because it does not "relate to" ERISA plans within the meaning of § 514(a). This provision does not represent a state attempt to regulate ERISA plans or to graft added benefits onto these plans. Although this state law has an impact on the distribution of assets, the Court finds this impact the kind of remote "touching" that the *Merry* court excluded from the meaning of "relating to." *See supra* at 1053. Mobil attempts to avoid this conclusion by citing a long list of complications that it asserts might occur if the community property system were completely integrated into the administration of ERISA plans. Mobil Memorandum at pp. 22–24. For example, Mobil expresses its concern that the administrators of the plans might be required to keep records reflecting the interests of the spouses and even to permit them to participate in the plans as if the Act had granted them the

---

1. It should be noted that § 514(c)(1) extends to "all laws, decisions, rules, regulations or other State action having the effect of law ...," 29 U.S.C. § 1144(c)(1), and thus a court order would be preempted if it "related to" an employee benefit plan.

2. Under the terms of the decree, she was to receive a direct monthly payment of 40%.

same rights as the participants.[3] Surely, Mobil argues, the magnitude of these complications shows that community property laws "relate to" ERISA plans. This argument misses the point. The Court need not decide whether wholesale integration of the community property system would be preempted. The question here is only whether the *final* distribution of a deceased participant's vested interest must take into account community property principles. Stated another way, the question here is whether Congress intended complete cancellation of the state's traditional spousal property rights. That Congress may have intended to bar extensive state intrusions into the ERISA system is not the issue. Section 514(a) reflects an intent to preempt state laws only "*insofar* as they ... relate to" ERISA plans. 29 U.S.C. § 1144(a) (emphasis added). Thus, the Court finds that Congress did not intend to preempt community property laws to the extent that they require the distribution claimed in this case.[4]

Other considerations peculiar to family and family-property laws lead us to conclude that Congress did not intend preemption here. Recent Supreme Court cases have made clear that in order for federal law to preempt state community property laws, the federal law must " 'positively require[] by direct enactment' that state law be preempted." *Hisquiero v. Hisquiero*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (*quoting Wetmore v. Markoe*, 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904)). Under this standard the state law must not only conflict with the federal law,

it must do " 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." *Id. (citing United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966)). *Accord, McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). This higher standard derives from the recognition that the law of domestic relations belongs to the states and not to the federal government. *Id.* (noting that federal courts decline to assert diversity jurisdiction in divorce cases).[5]

Enforcement of the state law in question in this case would not cause "major damage" to a "clear and substantial federal interest" served by ERISA. Congress, in enacting ERISA, declared its policy to be the protection of employees vis à vis their employers. 29 U.S.C. § 1001. Accordingly, ERISA regulates funding, disclosure, and the vesting of rights in the plans. The Act displays no particular interest in preserving maximum benefits to any particular beneficiary. Although the Act provides a method for the participant to designate a beneficiary, this procedure appears to be another provision for the protection of the employee in his relations with his employer and not a federal decision to upset the balance of spousal rights protected by state law.

Cases in which the Supreme Court has found the requisite damage to federal interests differ from the case at hand. In *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the Court found that the federal statute providing retirement pay to military officers served major federal goals by providing for the

---

3. Mrs. Geer contends that Mobil's disruption of potential complications is grossly exaggerated. She argues that a wife's rights in community property managed by her husband do not come into fruition until divorce or the death of the husband. For the reasons stated in the text, we do not resolve this disagreement between the parties.

4. In reaching this conclusion, the Court has decided a question of statutory construction and as the Court of Appeals for this Circuit has observed, such a decision "must prevail despite any resultant and unresolved pension administration problems." *See American Tel. & Tel.*

*Co. v. Merry*, 592 F.2d 118, 125 n.16 (2d Cir. 1979).

5. Contrary to the Supreme Court's clear language and relying solely on the outcome in cases in which the Court found a major federal interest, Mobil states: "[the] argument that community property laws are 'different' and entitled to special deference is one that has found *no* support in any court sitting outside a community property state. Indeed, the argument has been continually rejected by the United States Supreme Court." Mobil Reply Memorandum at p. 11.

needs of the retired officer and by facilitating the management of military personnel.[6] This statute preempted application of state community property laws that the Court found would impede those goals.

In *Hisquiero v. Hisquiero*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), the Supreme Court considered the Railroad Retirement Act, 29 U.S.C. § 1001 *et seq.*, which created a system of federally administered benefits similar to Social Security. Under this act, Congress has "carefully targeted" the benefits to be provided, consciously "fixed an amount thought appropriate to support an employee's old age and to encourage the employee to retire," and specifically limited the extent to which a divorced spouse may reach these assets. 439 U.S. at 584–85, 99 S.Ct. at 809–10. In finding these federal interests sufficient to permit federal preemption, the Supreme Court suggested that the Railroad Retirement Act should be distinguished from ERISA:

> In [the Railroad Retirement Act], Congress has granted a separate spouse's benefit, and has terminated that benefit upon absolute divorce. Different considerations might well apply where Congress has remained silent on the subject of benefits for spouses, particularly when the pension program is a private one which federal law merely regulates. See Employee Retirement Income Security Act of 1974, 88 Stat. 829, 29 U.S.C. § 1001 *et seq.* Our holding intimates no view concerning the application of community property principles to benefits payable under programs that possess these distinctive characteristics.

*Id.* at 591, n.24, 99 S.Ct. at 813, n.24.

This Court finds that ERISA should be distinguished from the statutes involved in *Hisquiero* and *McCarty*. ERISA merely imposes standards on private administrators of private benefit plans. It makes no provision for spousal rights and evinces no special concern for preserving all of the benefits of the plans for the participants. The application of community property law urged by Mrs. Geer in this case cannot do substantial damage to any major federal interest, and thus, "the Supremacy Clause [does not] demand that state law be overridden." *See Hisquiero v. Hisquiero*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). Even if the avoidance of the kind of administrative complications cited by *Mobil*, see pp. 5–6, *supra*, were considered a major federal interest, we do not think that the limited application of community property law considered here would inflict substantial damage on that interest.

Mobil bases a large portion of its argument on the contention that state community property law should not receive the kind of deference given to the state law obligation to support one's family. Mobil contends that community property law is "far less fundamentally rooted in state tradition than the duty to support one's family." Mobil's Memorandum at p. 9 (*citing Wissner v. Wissner*, 338 U.S. 655, 660, 70 S.Ct. 398, 400, 90 L.Ed. 424 (1950)). The *Wissner* Court, however, did not deny the long tradition of state community property law, which it called "at least as ancient as the customs of the Visigoths." *Id.* at 659–60, 70 S.Ct. at 400. Rather, it noted that community property law rested more on the "business relationship between husband and wife" than on morality. *Id.* at 660, 70 S.Ct. at 400.[7] In *Wissner*, the Supreme Court found that the National Service Life Insurance Act of 1940 preempted state community property law, noting that Congress intended to afford servicemen a "uniform and comprehensive system of life insurance"

---

**6.** With respect to the latter goal, the Court noted that the retirement system encourages enlistment, reenlistment, and retirement at an appropriate age.

**7.** For a discussion of the idea that community property law in practice serves the same state interests as the obligation to support, see *Stone v. Stone*, 450 F.Supp. 919, 925–31 (N.D.Cal.

1978), *aff'd*, 632 F.2d 740 (9th Cir. 1980), *cert. denied sub nom. Seafarers Int'l Union v. Stone*, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981). The *Stone* court noted that both laws are concerned with meeting the needs of the nonemployee spouse and that neither is limited to providing the minimum necessary amount.

and specifically directed that the proceeds of this insurance "belong to the named beneficiary and no other." 338 U.S. at 658. Although the *Wissner* Court indicates in dictum that community property law, because of its lesser appeal to morality, is less likely to justify an exception to clear congressional language than the duty to support one's family, *Wissner* presents strong federal interests very much like those in *McCarty*, and we see no reason why the *Wissner* dictum should change our conclusion.

Nor is this conclusion affected by Mobil's citation of *American Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 125 (2d Cir. 1979), for the proposition that "[t]his Circuit has recognized a narrow exception to ERISA's preemption provision '*solely* for court ordered support payments to dependents.'" Mobil's Reply Memorandum at p. 11 (emphasis added by Mobil). Viewed in context, this quote appears to refer to the court's finding that support payments are exempt from ERISA's antiassignment and antialienation provisions, 29 U.S.C. § 1056(d)(1), which are not in issue in this case.[8] *See also Cody v. Riecker*, 594 F.2d 314 (2d Cir. 1979). Different considerations apply in deciding whether the antiassignment and antialienation provisions override state law, and courts have in this area exhibited greater deference to state support laws. *See Hisquiero v. Hisquiero*, 439 U.S. 572, 586–87, 99 S.Ct. 802, 810–11, 59 L.Ed.2d 1 (1979); *Cody v. Riecker*, 594 F.2d 314, 315–17 (2d Cir. 1979). It should be noted, however, that the most recent Second Circuit case dealing with this question stated in dictum that community property rights may even override the antiassignment and antialienation provisions of ERISA, permitting enforcement of these rights against the expectation of ERISA retirement benefits. *Id.* at 317, (*citing Hisquiero v. Hisquiero*, 439 U.S. 572, 590 n.24, 99 S.Ct. 802, 813 n.24, 59 L.Ed.2d 1 (1979)).[9] If the expectation of retirement benefits may be reached despite ERISA's express prohibition of assignment or alienation, then surely the final distribution of a decedent's vested interest in a plan cannot escape the application of community property principles.

Finally, Mobil argues that the three cases cited by Mrs. Geer which found that § 514(a) did not preempt state community property law,[10] if given any credence at all, should be limited to cases involving divorce decrees. Mobil characterizes the courts' findings of preemption as dicta, since their finding of an implied exception to ERISA's antiassignment and antialienation provisions would alone have sufficed to permit the enforcement of court orders assigning community property pursuant to a divorce. Here again, Mobil repeats its theme that only the state law obligation to support one's family deserves any federal deference. Even though these courts reached pension assets only because they were community property, the context of a divorce proceeding, according to Mobil, involved the consideration of the spouse's need for support. As discussed above, the Court cannot accept the proposition that only support-oriented state law is entitled to deference.[11]

For the reasons stated herein, the Court denies Mobil's motion for summary judgment.

---

8. In addition, it appears that the court in making this statement was not reaching out to decide other questions not in issue in that case, but was merely emphasizing the limited nature of its holding in order to demonstrate the inapplicability of one of the appellant's arguments.

9. The *Hisquiero* footnote is quoted and discussed at p. 1056 *supra*.

10. These cases are: *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Myers*, 488 F.Supp. 704 (M.D. La.1980), aff'd, 645 F.2d 532 (5th Cir. 1981); *Carpenters Pension Trust v. Kronschnabel*, 460 F.Supp. 978 (C.D.Cal.1978), aff'd, 632 F.2d 745 (9th Cir. 1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); *Stone v. Stone*, 450 F.Supp. 919 (N.D.Cal.1978), aff'd, 632 F.2d 740 (9th Cir. 1980), cert. denied sub nom. *Seafarers Int'l Union v. Stone*, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981).

11. Mobil also suggests that limitation of the exclusion from preemption to divorce decree cases would avoid many of the administrative complications it fears would result if Mrs. Geer's claim prevails. The Court considers this problem *supra*, at pp. 1054 55.