ROBERT L. KAREM AND HAZEL W. KAREM, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 715–91.          Filed June 14, 1993.

Robert L. Karem, pro se.
*Linda J. Ozkan,* for respondent.

DAWSON, *Judge:* This case was assigned to Special Trial Judge Francis J. Cantrel pursuant to section 7443A(b)(3) and

Rules 180, 181, and 182.[1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1987 in the amount of $3,855 and additions to tax under section 6653(a)(1)(A) and (B) in the amounts of $192.75 and 50 percent of the interest due on $3,855, respectively.

The issues for decision are (1) whether petitioner Robert L. Karem (petitioner) properly excluded from the tax imposed by section 402(e)(1)(A) that portion of a lump-sum distribution he received from a qualified pension plan in 1987 which was paid to his former spouse pursuant to a consent judgment partitioning their community property in 1988, and (2) whether petitioners are liable for the additions to tax for negligence under section 6653(a)(1)(A) and (B).

## FINDINGS OF FACT

Some of the facts were stipulated, and they are found accordingly. Petitioners resided in Pearl River, Louisiana, at the time their petition was filed. They timely filed a 1987 joint Federal income tax return.

Prior to the taxable year at issue, petitioner was married to Barbara Wiechman Karem (Barbara). During his marriage to Barbara, petitioner was a participant in the D.H. Holmes, Inc. Pension Plan (the plan), which was a tax-qualified plan. Petitioner and Barbara were divorced on November 5, 1985, in Louisiana, but the community property acquired during their marriage was not partitioned until 1988. On March 13, 1987, Barbara consented to petitioner's election of a lump-sum distribution from the plan, and on July 9, 1987, petitioner received a lump-sum distribution for that year in the amount of $98,253.52 (the distribution). The Form 1099-R, Total Distributions From * * * Retirement Plans, sent to petitioner by the plan reflects that the taxable amount of the distribution was $47,264.44. The distribution check was deposited into a trust account maintained by petitioner's

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

divorce attorney, Sydney Parlongue, pending partition of petitioner's and Barbara's community property.

A consent judgment of partition of community property (the consent judgment) was rendered by the Civil District Court for the Parish of Orleans, State of Louisiana, on July 15, 1988. The consent judgment provides the following with respect to partition of the parties' interests in pension plans:[2]

5) BARBARA WIECHMAN KAREM shall receive, and does hereby receive, her interest in the D.H. Holmes Pension Plan pursuant to the *Sims v. Sims* formula. Her interest being $931.05 per month for life. She shall receive that interest pursuant to a Qualified Domestic Relations Order to be prepared by Robert Louis Karem. Until the Qualified Domestic Relations Order is completed, Robert Louis Karem shall pay Barbara Wiechman Karem her interest in the pension plan immediately when he receives it.

\* \* \* \* \* \* \*

7) BARBARA WIECHMAN KAREM shall receive, and does hereby receive, one-half of the funds held by Sydney Parlongue said one-half in the amount of $49,126.76.

\* \* \* \* \* \* \*

3) ROBERT LOUIS KAREM shall receive, and does hereby receive, his interest in the D.H. Holmes Pension Plan pursuant to the *Sims v. Sims* formula. His interest is $931.05 per month for life. He shall receive that interest pursuant to a Qualified Domestic Relations Order.

\* \* \* \* \* \* \*

7) ROBERT LOUIS KAREM shall receive, and does hereby receive, one-half of the funds held by Sydney Parlongue, his one-half, in the amount of $49,126.76.

Petitioner elected the 10-year averaging method on part IV of Form 4972, Tax on Lump-Sum Distributions, attached to petitioners' joint Federal income tax return for 1987. On Form 4972, petitioner reported $25,644[3] as ordinary income and tax due on lump-sum distributions in the amount of $1,890. Respondent determined that the tax due on lump-sum distributions, calculated on Form 4972 on the basis of a total taxable amount of $49,275, is $5,745. Respondent

---

[2] It appears that petitioner participated in more than one D.H. Holmes pension plan. In a letter to his attorney, Sidney Parlongue, from D.H. Holmes Co., Ltd., transmitting the lump-sum distribution check to petitioner, the payment is described as petitioner's distribution from "D.H. Holmes' old pension plan."

[3] The taxable amount shown on petitioner's Form 4972 consisted of one-half of the taxable amount received from the D.H. Holmes, Inc. Pension Plan and $2,011.86 he received from D.H. Holmes, Ltd.

included 100 percent rather than one-half of the taxable amount of the plan distribution in determining the lump-sum distribution tax. For convenience, references to "all of the distribution" are to 100 percent of the taxable portion of the plan distribution, $47,264.44; references to "one-half of the distribution" are to 50 percent of that amount.

OPINION

Respondent contends that petitioner must include all of the distribution in petitioners' 1987 gross income. Petitioner argues that he is entitled to exclude one-half of the distribution from taxation. He offers two alternative arguments in support of this position: (1) That the consent judgment entered by the Louisiana court is a qualified domestic relations order (QDRO) within the meaning of section 414(p) and that Barbara, as the alternate payee under a QDRO, must be treated as the distributee of one-half of the distribution under section 402(a)(9), or (2) that under Louisiana community property law, one-half of the pension plan account belonged to Barbara at the time of the distribution, and therefore petitioner is not the distributee with respect to that one-half.

We first consider petitioner's argument that the consent judgment rendered in 1988 by the Louisiana court is a QDRO and that Barbara must be treated as the distributee of one-half of the distribution under section 402(a)(9). Prior to enactment of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, attachments of a participant's interest in a tax-qualified plan were not prohibited by the Internal Revenue Code. Section 401(a)(13), requiring tax-qualified plans to provide "that benefits provided under the plan may not be assigned or alienated", was added by ERISA section 1021(a), 88 Stat. 935. The same rule is set forth for pension plans generally, whether or not tax qualified, by ERISA section 206(d)(1), 29 U.S.C. section 1056(d)(1) (1988). ERISA section 514(a), 29 U.S.C. sec. 1144(a) (1988), provides that the labor title of ERISA preempts State laws. Subsequent to the enactment of ERISA, disputes arose as to whether these provisions preempt provisions of State laws concerning community property and family support obligations. To resolve conflicting interpretations of ERISA in

these areas, the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, was enacted, providing new rules for the treatment of certain domestic relations orders that require distribution under State law of all or a part of a plan participant's benefits to a spouse or former spouse. REA section 204(b), 98 Stat. 1445, added section 414(p), defining a "qualified domestic relations order" or QDRO, and REA section 204(c)(1), 98 Stat. 1448, added section 402(a)(9), providing for the taxability of an "alternate payee" (as defined in section 414(p)(8)) under a QDRO. Section 414(p) provides, in part:

SEC. 414(p). QUALIFIED DOMESTIC RELATIONS ORDER DEFINED.—For purposes of this subsection and section 401(a)(13)—

(1) IN GENERAL.—

(A) QUALIFIED DOMESTIC RELATIONS ORDER.—The term "qualified domestic relations order" means a domestic relations order—

(i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(ii) with respect to which the requirements of paragraphs (2) and (3) are met.

(B) DOMESTIC RELATIONS ORDER.—The term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—

(i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(ii) is made pursuant to a State domestic relations law (including a community property law).

(2) ORDER MUST CLEARLY SPECIFY CERTAIN FACTS.—A domestic relations order meets the requirements of this paragraph only if such order clearly specifies—

(A) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(B) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(C) the number of payments or period to which such order applies, and

(D) each plan to which such order applies.

The consent judgment upon which petitioner relies clearly does not meet the requirements set forth in section 414(p)(2). The consent judgment directs that a QDRO be drafted with respect to future payments to Barbara from another pension

plan; the consent judgment itself is not a QDRO with respect to either the future payments or the lump-sum distribution at issue in this case. In addition, the consent judgment was rendered by the Louisiana court more than a year after the distribution was made to petitioner. The distribution was made to petitioner alone, as the participant in the plan, and no part of the distribution was paid by the plan to Barbara. Section 414(p)(6) and (7) contemplates that a domestic relations order will be presented to the plan administrator and adjudged "qualified" *before* any distribution is made by the plan to the spouse or former spouse. Therefore, we hold that the consent judgment is not a QDRO and that Barbara is not an alternate payee under a QDRO with respect to the lump-sum distribution.

In the alternative, petitioner contends that one-half of the lump-sum distribution is taxable to Barbara by operation of Louisiana community property laws. The parties have not cited, nor have we found, any reported case addressing the effect of community property laws on Federal income taxation of a lump-sum distribution from a qualified pension plan.[4]

Under section 402(a)(1), the general rule is that a distribution from a qualified plan is taxed to the distributee in the year in which distributed under section 72 (relating to annuities); however, special provisions apply to lump-sum distributions from qualified pension plans under section 402(e). Section 402(e) was amended by ERISA section 2005(a), 88 Stat. 987, to provide a more equitable means of taxing a lump-sum distribution from a pension plan received within a single taxable year rather than over the course of the participant's retirement. The method chosen to achieve this goal was allowance of 10-year[5] averaging of lump-sum distribu-

---

[4] The tax consequences of a taxpayer's payment of a portion of his lump-sum distribution from a qualified pension plan to his former spouse pursuant to a State court order were considered in *Darby v. Commissioner*, 97 T.C. 51 (1991), but community property was not involved. In *Eatinger v. Commissioner*, T.C. Memo. 1990-310, *Denbow v. Commissioner*, T.C. Memo. 1989-92, and *Lowe v. Commissioner*, T.C. Memo. 1981-350, we considered the effect of community property laws on taxation of military retirement programs. These cases are distinguishable from the instant case because the military retirement programs are subject to different statutes than the qualified pension plan at issue here.

[5] Ten-year averaging was replaced by 5-year averaging in 1986, subject to a transition rule allowing certain taxpayers to elect 10-year averaging for lump-sum distributions received after the effective date of the change. Sec. 402(e)(1), as amended by sec. 1122(a)(2) of the Tax Reform Act of 1986. Pub. L. 99-514. 100 Stat. 2466. provides:

SEC. 402(e). TAX ON LUMP SUM DISTRIBUTIONS.—

tions. To implement this method, section 402(e)(1)(A) imposes a separate tax on the ordinary income portion of a lump-sum distribution. The tax is computed separately from and in addition to the income tax due on the taxpayer's other income, and the taxpayer is allowed a deduction from gross income for that taxable year in the amount of the total taxable amount of the lump-sum distribution, to the extent it is otherwise includable in the taxpayer's gross income for such taxable year. Secs. 402(e)(3), 62(a)(8).

No change was made in petitioners' gross income for the taxable year 1987 in the notice of deficiency, but petitioners' tax liability was increased because respondent determined that a greater portion of the distribution is subject to the tax on lump-sum distributions under the 10-year averaging method elected by petitioners. This result is consistent with the provisions of section 402(e)(3), which allows an offsetting deduction from gross income for amounts subject to the separate section 402(e)(1) tax on lump-sum distributions. In this context, the issue presented is whether petitioner must include all of the lump-sum distribution in calculating the separate tax imposed on lump-sum distributions by section 402(e)(1)(A), or whether under Louisiana community property law he may exclude one-half of the distribution from such tax. This is a question of first impression.

---

(1) IMPOSITION OF SEPARATE TAX ON LUMP SUM DISTRIBUTIONS.—

(A) SEPARATE TAX.—There is hereby imposed a tax (in the amount determined under subparagraph (B)) on the ordinary income portion of a lump sum distribution.

(B) AMOUNT OF TAX.—The amount of tax imposed by subparagraph (A) for any taxable year is an amount equal to 5 times the tax which would be imposed by subsection (c) of section 1 if the recipient were an individual referred to in such subsection and the taxable income were an amount equal to $1/5$ of the excess of—

(i) the total taxable amount of the lump sum distribution for the taxable year, over

(ii) the minimum distribution allowance.

(C) MINIMUM DISTRIBUTION ALLOWANCE.—For purposes of this paragraph, the minimum distribution allowance for the taxable year is an amount equal to—

(i) the lesser of $10,000 or one-half of the total taxable amount of the lump sum distribution for the taxable year, reduced (but not below zero) by

(ii) 20 percent of the amount (if any) by which such total taxable amount exceeds $20,000.

(D) LIABILITY FOR TAX.—The recipient shall be liable for the tax imposed by this paragraph.

Sec. 1122(h)(5) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2471-2472, provides:

(5) Election of 10-Year Averaging.—An individual who has attained age 50 before January 1, 1986, and elects the application of paragraph (3) or section 402(e)(1) of the Internal Revenue Code of 1986 (as Amended by this Act) may elect to have such section applied by substituting "10 times" for "5 times" and "$1/10$" for "$1/5$" in subparagraph (B) thereof. For purposes of the preceding sentence, section 402(e)(1) of such Code shall be applied by using the rate of tax in effect under section 1 of the Internal Revenue Code of 1954 for taxable years beginning during 1986.

Generally, a married taxpayer in a community property State is taxable on only one-half of his or her income, while the taxpayer's spouse is taxable on the other half. Ordinarily then, absent contrary statutory provision, a taxpayer in a community property State might be taxable on only one-half of a lump-sum distribution received during the taxable year. However, section 402(e)(4)(G) provides that "the provisions of this subsection, other than paragraph (3), shall be applied without regard to community property laws." [6] As a result, community property laws do not relieve the recipient of a lump-sum distribution of liability for any portion of the separate tax imposed on the lump-sum distribution by section 402(e)(1). The following legislative history of ERISA reflects that this was intended by Congress:

> In order to treat all distributees equally, all computations of the tax on the 15-year averaging ordinary income portion are to be made on the basis of the tax schedule for unmarried individuals. In addition, community property laws are to be ignored for these purposes. Thus, a distributee in a community property State is to compute his tax on the basis that the entire amount of the distribution is his income. [S. Rept. 93-383 (1973), 1974-3 C.B. (Supp.) 80, 220-221; fn. ref. omitted.]

The legislative history further states:

> In order to treat all distributees equally, all computations of the tax on the ten-year averaging ordinary income portion are to be made on the basis of the tax schedule for unmarried individuals.[4] In addition, community property laws are generally to be ignored for these purposes.[5]

---

[4] Distributees, in computing the tax on their other income (including the capital gain element of the distribution), may use any appropriate tax schedule. They are not restricted to the schedule for unmarried individuals.

[5] Prior to the computation of the separate tax on the ordinary income portion of the distribution, under the committee bill an amount must be subtracted from the income of the retiree. In community property states, the amount subtracted will, of course, generally be only one-half of the ordinary income portion of the lump-sum distribution. The other half of this lump-sum distribution must be subtracted from the income of the spouse which may be reported on a separate tax return. *After the computation of the separate tax with respect to the ordinary income portion, this tax is added to the tax on the retiree alone as otherwise computed, and not to that of the spouse where she is computing her tax on a separate return.* The capital gain portion of the lump-sum distribution in a community property state is to continue as under present law to be included one-half in the

---

[6] We note that we relied on sec. 402(e)(4)(G) in *Burton v. Commissioner,* 99 T.C. 622 (1992).

income of the retiree and one-half in the income of the spouse. [H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 386-387; emphasis added.]

We conclude from the plain language of the statute and this legislative history that petitioner, as the participant in the plan and recipient of the lump-sum distribution, is taxable under section 402(e)(1) on all of the distribution he received, notwithstanding any provision of Louisiana community property law.

We note that we would reach the same result on these facts under sections 402(a)(1) and 72 if petitioner had not elected 10-year averaging treatment under section 402(e). The effects of State community property laws on pension plans covered by ERISA, after the REA amendments, were considered in *Ablamis v. Roper,* 937 F.2d 1450 (9th Cir. 1991). The issue in *Ablamis* was whether California community property laws, which might have allowed a wife who predeceases her husband to leave half of his current or future pension benefits to a third party in her will,[7] were preempted by the antiassignment provisions of ERISA. The Court of Appeals for the Ninth Circuit held that after the REA amendments, only State court orders meeting the REA requirements for QDRO's are excepted from the ERISA antiassignment provisions; an order that does not qualify as a QDRO contravenes the direct language of ERISA's antiassignment provision and does not divest a plan participant of benefits under an ERISA plan. *Id.* at 1459. The Court of Appeals for the Ninth Circuit concluded that the California Probate Court order at issue in *Ablamis* did not qualify under the limited QDRO exception. Further, to the extent that California community property laws may permit the testamentary transfer of a deceased spouse's purported community property interest in a surviving spouse's pension benefits, the Court of Appeals held that such law is preempted by ERISA. *Id.* at 1461. The *Ablamis* decision has been followed in a declaratory judgment action concerning the effect of Louisiana community property laws applicable to intestate succession of an interest in a pension plan covered by ERISA. *Meek v. Tullis,* 791 F. Supp. 154 (W.D. La. 1992); cf. *United Association of Journeymen & Apprentices of the Plumbing &*

---

[7] The Court of Appeals for the Ninth Circuit did not decide whether California community property law would permit such a transfer.

*Pipefitting Indust. of the United States & Canada Local 198 AFL-CIO Pension Plan v. Myers,* 488 F. Supp. 704 (M.D. La. 1980) (holding that under pre-REA law, ERISA does not pre-empt the laws of Louisiana on community property), affd. on other grounds 645 F.2d 532 (5th Cir. 1981). Under the rationale of the Court of Appeals set forth in *Ablamis,* except as allowed by the limited QDRO exception, State community property laws are ineffective to divest a participant of his or her interest in an ERISA plan.

In *Darby v. Commissioner,* 97 T.C. 51 (1991), a case not involving community property, we considered whether a tax-payer properly excluded from his income that portion of a lump-sum distribution he received from a pension plan and paid to his former wife pursuant to a court order. The tax-payer in *Darby* argued that, under Michigan law, the divorce decree awarding his former wife a portion of his interest in the pension plan and his execution of an assignment of a por-tion of his plan interests pursuant to the divorce decree resulted in a legal transfer of a portion of his interest in the pension plan to his former wife. Our analysis in *Darby* focused on whether the taxpayer was the "distributee" of the contested portion of the plan distribution for purposes of sec-tions 402(a)(1) and 72. The distribution at issue in *Darby* was received by the taxpayer in 1983 prior to the REA amendments providing for QDRO's (which went into effect on January 1, 1985) and the Tax Reform Act of 1986 (TRA '86), Pub. L. 99-514, 100 Stat. 2085, amendments (providing that an alternate payee under a QDRO would be the distributee under section 402(a)(9) only if the alternate payee were the spouse or former spouse of the plan participant). Guided by the subsequent REA and TRA '86 amendments in our interpretation of pre-1985 law, we concluded in *Darby* that while the person to whom a distribution is made is not thereby automatically the distributee, ordinarily the partici-pant or beneficiary who, under the pension plan, is entitled to receive the distribution is the distributee for purposes of section 402(a)(1) under the statutory framework in place prior to the REA and TRA '86 amendments. We held that, absent the statutory modifications enacted in 1984 by REA, providing for QDRO's and alternate payees, the taxpayer in *Darby* was the distributee of the entire distribution and

therefore not entitled to exclude any part of the distribution from his income.

Here we have held that there was no QDRO directing payment from the plan to Barbara. We conclude that, in accordance with section 402(e)(4)(G) and with *Ablamis* and *Darby,* absent a valid QDRO directing payment of a portion of the distribution, Louisiana community property law is not to be considered for purposes of determining whether petitioner's former wife is a distributee of one-half of the distribution from petitioner's pension plan. Petitioner is the sole distributee of the lump-sum distribution. Therefore, petitioners' gross income in the taxable year of receipt includes all of the lump-sum distribution under sections 402(a)(1) and 72, notwithstanding Louisiana community property laws.[8]

For the foregoing reasons, respondent's determination with respect to the deficiency is sustained. On this record, however, we hold that imposition of the additions to tax for negligence under section 6653(a)(1)(A) and (B) is not warranted.

*Decision will be entered under Rule 155.*

---

[8] While the distribution is fully includable in gross income, it is subject to the offsetting deduction from gross income allowed by sec. 402(e)(3) for amounts otherwise taxable under the lump-sum distribution averaging provisions of sec. 402(e).