RODNEY L. POWELL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

FLORA B. POWELL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 14217–91, 18163–91.     Filed November 29, 1993.

*Clyde R. Maxwell*, for petitioner in docket No. 14217–91.
*Roger A. Grad*, for petitioner in docket No. 18163–91.
*Willis B. Douglass*, for respondent.

### OPINION

TANNENWALD, *Judge*: In these consolidated cases, respondent determined deficiencies of $20,623 in the Federal income tax of Rodney L. Powell (Rodney) for the taxable year 1984 and $16,237 in the Federal income tax of Flora B. Powell (Flora) for the taxable year 1985. The issue for decision is whether a distribution from a qualified pension plan of Rodney's employer is taxable in its entirety to Rodney or in part to Rodney and in part to Flora.

The cases were submitted fully stipulated under Rule 122.[1] The stipulated facts are so found, and the stipulation and the exhibits attached thereto are incorporated herein by this reference.

Each of petitioners resided in California at the times their petitions herein were filed. They filed cash basis, separate returns for the years in question with the Internal Revenue Service, Fresno, California.

Rodney and Flora were married on November 26, 1968. On May 5, 1983, judgment of dissolution of marriage was entered in the divorce proceeding entitled *Flora B. Powell v. Rodney L. Powell*, in the Superior Court of San Bernardino County, California, Cause No. OFL 20071. Rodney appealed this judgment to the Court of Appeal for the Fourth Appellate District of California. The court of appeal affirmed the judgment of the superior court on June 21, 1984. The judgment became final and enforceable on August 21, 1984.[2]

At all material times prior to July 9, 1984, Rodney was an employee of Rockwell International Corp. and as such became a participant in the Rockwell International Corp. Savings Plan (the plan). At all material times, the plan was a qualified plan under section 401(a).

The judgment in the divorce proceeding contains the following language:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that petitioner [Flora B. Powell] is awarded the following community property as her sole and separate property:

1. 58.96844% of savings plan in respondent's [Rodney L. Powell] name through Rockwell International with an approximate value of $39,661.00.

\* \* \* \* \* \* \*

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that respondent is awarded the following community property as his sole and separate property:

1. 41.03156% of the savings plan standing in the name of the respondent at Rockwell International in the value of $27,597.00.

\* \* \* \* \* \* \*

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent makes no contention that the marriage was dissolved prior to this date. See Cal. Civ. Code sec. 4514 (West 1983).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the respondent has the option of keeping the plan intact and paying the petitioner the sum of $39,661, plus interest thereon at the rate of 10% per annum from September 2, 1981 until paid.

Rodney terminated participation in the plan on July 9, 1984. During the second half of 1984, Rodney requested and received a lump-sum distribution of the entire plan account. The distribution took the form of 3,370 shares of the common stock of Rockwell International Corp. The distributions of stock represented pretax company contributions previously paid by Rockwell International Corp. into the plan account.

During 1984, 1,400 shares of the distributed stock were sold in the open market for a total price of $40,957.37. These proceeds were initially received by Rodney. The balance of the shares was sold during 1984 or 1985.[3] On December 31, 1984, Rodney delivered to his attorney for transmittal to Flora a check for $39,661. On a date between December 31, 1984, and April 4, 1985, Rodney's attorney delivered a check for $39,661 on behalf of Rodney to Flora's attorney. A check dated April 4, 1985, in the amount of $29,661 was distributed by the attorneys to Flora representing Rodney's payment less $10,000 in attorney's fees.

The issue before us is whether the provisions of sections 401(a)(13) and 402(a)(1) supersede the usual rules relating to the taxability of the income of married persons who are residents of a community property State (in this case, California).

Section 401(a)(13), which was added to the Internal Revenue Code by section 1021(c) of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, 937, provides in pertinent part:

(13) A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. * * * [4]

Section 402(a)(1) provides in pertinent part:

---

[3] The parties are in agreement that Rodney accorded proper tax treatment to the distribution and such dispositions except in respect of the $39,661 at issue herein.

[4] The text of the plan was not stipulated but since the parties stipulated that the plan "was a qualified plan under I.R.C. section 401(a)", it necessarily follows that the plan complied with sec. 401(a)(13).

SEC. 402(a). TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

(1) GENERAL RULE.— * * * the amount actually distributed to any distributee by any employees' trust described in section 401(a), which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed * * *

The critical question herein is whether, by virtue of the California community property law, Flora can be considered a "distributee" of the plan benefits.

Several aspects of the case deserve preliminary comment. First, since the taxable year of Rodney is 1984,[5] the provisions of the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, sec. 204(b), 98 Stat. 1426, 1445, which added section 414(p) to the Code, covering the effect of qualified domestic relations orders, are not applicable herein, and the parties do not argue otherwise. See *Darby v. Commissioner*, 97 T.C. 51 (1991). Second, none of the parties contest the proposition that, under California law, the distribution from the plan constituted income of the marriage community of Rodney and Flora, see *In re Marriage of Campa*, 152 Cal. Rptr. 362, 367 (Ct. App. 1979), appeal dismissed 444 U.S. 1028 (1980), and that it should be considered ordinary income under the Internal Revenue Code. The parties also agree that, under the usual rule, Rodney and Flora would each be taxable on their respective shares of such income. *United States v. Mitchell*, 403 U.S. 190 (1971); *United States v. Malcolm*, 282 U.S. 792 (1931). Third, none of the parties have articulated any view as to the impact of ERISA section 514(a), 29 U.S.C. sec. 1144(a) (1988), which provides for the preemption of State laws. See *Stone v. Stone*, 632 F.2d 740, 742 (9th Cir. 1980), cert. denied 453 U.S. 922 (1981); *Darby v. Commissioner, supra* at 59. In any event, as far as this case is concerned, the preemptive effect of section 514(a) depends upon the interpretation accorded to the word "distributee" in section 402(a)(1) in light of the antialienation provisions of section 401(a)(13). See *Savings & Profit Sharing Fund of Sears Emps. v. Gago*, 717 F.2d 1038, 1040 (7th Cir. 1983); cf. *Darby v. Commissioner, supra.* As will subsequently appear, however, we believe that the judicial and legislative attitudes in respect of preemption and antialienation, where community property interests are involved, are an appropriate element

---

[5] Flora's taxable year is 1985, but neither respondent nor Flora argues that the rules applicable to Rodney for 1984 should not apply.

to be considered in determining the meaning of "distributee", which is not defined either in the statute or the regulations. Cf. *Darby v. Commissioner, supra.*

Rodney argues that Flora is taxable on the amount she received because her right to share in the benefits under the plan was acquired not by way of transfer from him but directly by virtue of California community property law, with the result that she was a "distributee" under section 402(a)(1) and section 401(a)(13) is inapplicable. He points out that *Darby v. Commissioner, supra,* involved the division of pension benefits under ERISA in a noncommunity property State and therefore is not controlling. In the alternative, Rodney contends that, if we hold that the entire distribution is taxable to him, he acquired Flora's share of $39,661 by payment of that amount to her and his basis for computing how much should be included in his income should be increased by that amount.

Petitioner Flora argues that she acquired her share of the benefits by transfer in contravention of the antialienation provisions of section 401(a)(13) and that, although *Darby v. Commissioner, supra,* is factually distinguishable, its reasoning is applicable herein with the result that the total amount of the benefits is taxable to Rodney. Flora does not address Rodney's alternative position.

Respondent points out that she is a stakeholder but, nevertheless, states her agreement with Flora's position on the basis of the reasoning of *Darby v. Commissioner, supra.* She also disputes Rodney's alternative position on the basis of our rejection of a similar contention in *Darby.* See 97 T.C. at 72-73.

An essential ingredient of our analysis is the status of the distribution involved herein under California law. There is not the slightest doubt that, under that law, the distribution was community property in which Rodney and Flora each acquired an interest from the beginning of the employment of Rodney covered by the plan, i.e., each obtained an ownership interest in the pension rights ab initio. *In re Marriage of Lawson,* 256 Cal. Rptr. 283, 285 (Ct. App. 1989); *In re Marriage of Campa,* 152 Cal. Rptr. at 368; see *Operating Engineers, etc. v. Zamborsky,* 650 F.2d 196, 201 (9th Cir. 1981).

Another significant ingredient is reflected in the judicial attitude in respect of the interplay between Federal laws and State community property laws. This attitude is set forth in the following statement by the Supreme Court in *Mansell v. Mansell*, 490 U.S. 581, 587 (1989):

Because domestic relations are preeminently matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area. See, *e.g., Rose v. Rose*, 481 U.S. 619, 628 (1987); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979). Thus we have held that we will not find pre-emption absent evidence that it is " 'positively required by direct enactment' ". *Hisquierdo, supra*, at 581 (quoting *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904)). The instant case, however, presents one of those rare instances where Congress has *directly and specifically legislated in the area of domestic relations*. [Emphasis added.]

In light of the foregoing approach, the Supreme Court has decreed that Federal law supplants community property law only where the congressional intent to accomplish such a result is clear and unequivocal. *Mansell v. Mansell, supra* (military retirement pay and veterans' disability benefits); *McCarty v. McCarty*, 453 U.S. 210 (1981) (military retirement pay); *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979) (railroad retirement benefits); *Wissner v. Wissner*, 338 U.S. 655 (1950) (deceased army officer's life insurance); *In re Marriage of Hillerman*, 167 Cal. Rptr. 240 (Ct. App. 1980) (Social Security benefits).[6] In terms of the impact of ERISA on community property laws, the Court further observed, 439 U.S. at 590 n.24, in holding that the antialienation provision of the Railroad Retirement Act of 1974, Pub. L. 93-445, sec. 101, 88 Stat. 1305, 1345 (current version at 45 U.S.C. sec. 231m (1988)), preempted California community property law:

In this case, Congress has granted a separate spouse's benefit, and has terminated that benefit upon absolute divorce. *Different considerations might well apply where Congress has remained silent on the subject of benefits for spouses, particularly when the pension program is a private one which federal law merely regulates. See Employee Retirement Income Security Act of 1974, 88 Stat. 829, 26 U.S.C. sec. 1001 et seq.* Our holding

---

[6] For a discussion of the impact of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, on California community property law see Caples, "Erisa, Preemption and California Community Property Law," 22 Santa Clara L. Rev. 33 (1982); Quirk, "State Community Property laws: Coping with Federal Tax and Pension Laws," 19 Gonzaga L. Rev. 481, 500-509 (1983/84); Comment, "The Employee's Retirement Income Security Act of 1974—The Spouse's Interest or Non-Interest in a Community Property Asset," 12 Cal. W. L. Rev. 560 (1976).

intimates no view concerning the application of community property principles to benefits payable under programs that possess these distinctive characteristics. [Emphasis added.]

Both the Court of Appeals for the Ninth Circuit and the California courts have followed the same path and uniformly held that, in respect of rights in pension benefits, California community property law prevails over the provisions of ERISA dealing with preemption and alienation. *Operating Engineers, etc. v. Zamborsky, supra*; *Carpenters Pension Trust, etc. v. Kronschnabel*, 632 F.2d 745 (9th Cir. 1980); *Stone v. Stone, supra*; *In re Marriage of Baker*, 251 Cal. Rptr. 126, and cases collected at 128-129 (Ct. App. 1988); *In re Marriage of Campa, supra.*[7] Other courts have taken the same view. *Savings & Profit Sharing Fund of Sears Emps. v. Gago, supra*; *Employees Sav. Plans of Mobil Oil Corp. v. Geer*, 535 F. Supp. 1052 (S.D.N.Y. 1982); *United Association of Journeymen, etc. v. Myers*, 488 F. Supp. 704 (M.D. La. 1980), affd. on other grounds 645 F.2d 532 (5th Cir. 1981). In this connection, we note the treatment by the Court of Appeals for the Ninth Circuit in *Carpenters Pension Trust, etc. v. Kronschnabel, supra* at 748, of *In re Marriage of Campa, supra*, which was dismissed on appeal by the U.S. Supreme Court "for want of a substantial federal question". See *In re Marriage of Campa*, 444 U.S. 1028 (1980). Under such circumstance, the Court of Appeals for the Ninth Circuit concluded that the dismissal constituted an affirmance on the merits of the decision of the California Court of Appeal that the preemption and antialienation provisions of ERISA did not supplant California community property law. It explained its conclusion as follows:

the [Supreme] Court has explicitly stated, in, *e.g., Hicks v. Miranda, supra*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 and *Mandel v. Bradley, supra*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199, that *all* dismissals of appeals from state court for want of a substantial federal question are decisions on the merits. While a summary disposition of a state-court appeal may have less precedential effect upon subsequent Supreme Court decisions than would an opinion issued after briefs and argument, see, *e.g., Edelman v. Jordan*, 415 U.S. 651, 671, 94 S.Ct. 1347, 1359, 39 L.Ed.2d 662 (1974); R. Stern & E. Gressman, Supreme Court Practice 327-30 (5th ed. 1978),

---

[7] Respondent has taken the same approach in the past. See Priv. Ltr. Rul. 8309144 (Dec. 6, 1982); Priv. Ltr. Rul. 8252159 (Oct. 4, 1982); Priv. Ltr. Rul. 8204056 (Oct. 27, 1981); Priv. Ltr. Rul. 7952045 (Sept. 25, 1979); cf. Rev. Rul. 80-27, 1980-1 C.B. 85.

a summary dismissal for want of a substantial federal question fully binds the lower courts. The *Campa* appeal definitively presented the question whether ERISA preempts state-court orders directing a pension plan to pay a community property share of a participant's monthly benefits to his or her ex-spouse. The Supreme Court has answered that question in the negative. We are not at liberty to disregard the Court's ruling. [*Carpenters Pension Trust, etc. v. Kronschnabel*, 632 F.2d at 748-749; fn. ref. omitted.]

See also *Savings & Profit Sharing Fund of Sears Emps. v. Gago*, 717 F.2d at 1043; *In re Marriage of Baker*, 251 Cal. Rptr. at 129.[8]

Finally, we note that Congress itself recognized the need to deal expressly with community property laws. Thus, in enacting ERISA, Congress specified that certain sections of the Internal Revenue Code should be applied without regard to community property laws. See secs. 219(f)(2), 402(e)(3)(G), 408(g). This selective treatment, at the very least, suggests that Congress intended community property laws were to be taken into account in other ERISA contexts. See *In re Marriage of Campa*, 152 Cal. Rptr. at 369.

We now turn to the impact of *Darby v. Commissioner*, 97 T.C. 51 (1991), heavily relied upon by Flora and respondent. In that case, we held that a 1983 distribution from a qualified profit-sharing plan pursuant to a provision in a State court divorce decree dividing property of a husband and wife residing in a noncommunity property State (Michigan) was taxable in its entirety to the husband-employee even though a portion of that distribution was paid by him to his former wife in accordance with the decree. In so doing, we stated at the outset of our opinion that "a distributee of a distribution under a plan *ordinarily* is the participant or beneficiary who, under the plan, is entitled to receive the distribution." *Id.* at 58 (emphasis added). We then set forth a detailed analysis of the intent of Congress as to the meaning of "distributee" in light of the antialienation provision of section 401(a)(13). Based on that analysis, we concluded that (1) "the person to whom a distribution is made is not thereby *automatically* the distributee", *id.* at 64 (emphasis added); (2) "the owner of the interest under the plan is not *thereby* the distributee", *id.* at 65 (emphasis added); (3) the view "that 'distributee' means 'participant (or beneficiary) under the plan'" appears to be

---

[8] For a full discussion of such dispositions by the Supreme Court, see Stern et al., Supreme Court Practice 239-252 (6th ed. 1986).

consistent with "the intent of Congress", coupled with the further observation that "We do not have to decide in the instant case whether that is the definitive or only meaning of 'distributee' ", *id.* at 66. We then stated:

In our research we did not find any cases directly on point with the instant case. We did, however, find Memorandum Opinions in which this Court held that the nonemployee spouse must include in income pension benefits paid to her as her share of her former husband's retirement benefits. Each of these Memorandum Opinions, *Eatinger v. Commissioner*, T.C. Memo. 1990-310, *Denbow v. Commissioner*, T.C. Memo. 1989-92, and *Lowe v. Commissioner*, T.C. Memo. 1981-350, involved a determination of the effect of community property laws on the incidence of taxation of distributions under Federal military retirement programs. *Since the instant case does not involve community property and does not involve Federal military retirement programs (which are subject to other statutes), we do not have to determine in the instant case how section 402(a)(1) is to interact with those other laws.* As to the precedential value of Memorandum Opinions, see, e.g., *Newman v. Commissioner*, 68 T.C. 494, 502 n.4 (1977). [*Id.* at 67; emphasis added.]

In light of our restrained articulation in *Darby*, and particularly its caveat as to a community property situation, we are satisfied that *Darby* does not compel a decision that the entire distribution should be taxable to Rodney. On the contrary, we believe that the qualifications attached to our analysis in *Darby* offer sufficient flexibility to reach a different result where community property laws apply. We likewise find *Ablamis v. Roper*, 937 F.2d 1450 (9th Cir. 1991), and *Karem v. Commissioner*, 100 T.C. 521 (1993), cited by the parties, distinguishable. Both of these cases held that the modifications of ERISA by section 414(p), see *supra* p. 491, preempted community property laws in respect of post-REA years.

Against the foregoing background, we come back to the basic question involved herein; i.e., whether Flora is a "distributee" within the meaning of section 402(a)(1) in light of the antialienation provision of section 401(a)(13). The dictionary definition of "alienate" is "to convey or transfer to another (as title, property, or right): part voluntarily with ownership of". Webster's Third New International Dictionary (1981). In the instant case, there was no such conveyance or transfer. By virtue of California community property law, Flora's rights were acquired by her directly at the outset and did not represent a transfer to her of rights which had pre-

viously accrued to Rodney. *Operating Engineers, etc. v. Zamborsky*, 650 F.2d at 201; *In re Marriage of Lawson*, 256 Cal. Rptr. at 285; *In re Marriage of Pilatti*, 157 Cal. Rptr. 594, 596 (Ct. App. 1979), cert. denied 445 U.S. 916 (1980); *In re Marriage of Campa*, 152 Cal. Rptr. at 368; see also *United Association of Journeymen, etc. v. Myers*, 488 F. Supp. at 713. The divorce decree did not transfer any rights to Flora; it simply accomplished a division of preexisting community ownership of the pension benefits. *Stone v. Stone*, 450 F. Supp. 919, 926 (N.D. Cal. 1978), affd. 632 F.2d 740 (9th Cir. 1980), cert. denied 453 U.S. 922 (1981); *In re Marriage of Johnston*, 149 Cal. Rptr. 798, 806 (Ct. App. 1978), cert. denied 444 U.S. 1035 (1980). The situation herein is thus quite different from that which existed in *Darby v. Commissioner, supra*, where there was a transfer of a portion of the husband-employee's pension rights owned by the husband by the State court order. The same can be said of *Ablamis v. Roper, supra*, where the Court of Appeals for the Ninth Circuit emphasized that a transfer was involved, namely, a testamentary disposition by a predeceased spouse of her interest in the surviving employee's pension benefits under California community property law, distinguishing, see 937 F.2d at 1459, the position it had taken in *Carpenters Pension Trust, etc. v. Kronschnabel, supra*.

In short, we view *Darby v. Commissioner, supra*, as recognizing an exception in respect of ownership of pension benefits acquired under California community property law. *Darby* simply said, in using the word "thereby", that an owner was not necessarily a distributee and specifically observed that its statement that a "distributee" had to be a participant[9] or beneficiary was not an exclusive definition of that word. See *supra* p. 496. Accordingly, we conclude that Flora was a "distributee" of the pension benefits under section 402(a)(1) and that consequently Flora is taxable on her share of those benefits. Our conclusion is not affected by the fact that initially the entire distribution was made to Rodney. We think he received the distribution not as the sole distributee under section 402(a) but as a "distributee" on behalf of the community and that his later payment to Flora

---

[9] We note that a nonemployee spouse has been characterized as a "participant" in applying California community property law. *Stone v. Stone*, 632 F.2d 740 (9th Cir. 1980); *In re Marriage of Pilatti*, 157 Cal. Rptr. 594, 597 (Ct. App. 1979).

was a transfer to her of funds that at all times belonged to her.[10]

Our holding that Flora was a "distributee" and is therefore taxable on her share of the pension benefits makes it unnecessary for us to deal with Rodney's alternative contention.

> *Decision will be entered for petitioner in docket No. 14217-91.*
>
> *Decision will be entered for respondent in docket No. 18163-91.*[11]

---

[10] The funds were actually paid to Flora in 1985. Flora has made no contention that, if she is held taxable on those funds, she constructively received such funds in 1984.

[11] The deficiency notice, in this docket, determined an addition to tax for a substantial understatement under sec. 6661 which petitioner contested in her original brief but to which respondent gave no attention either in her original brief or reply brief. We consider that respondent has abandoned this issue.