124 T.C. No. 10


UNITED STATES TAX COURT


JOHN MICHAEL DUNKIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4448-03.                    Filed March 31, 2005.


        Petitioner (P), who was divorced, was entitled to
retire and receive pension payments.  If P had retired,
his former spouse would have been entitled under
California community property law to receive an amount
from P equal to one-half of his pension.  However, P
continued working, delaying his receipt of pension
benefits.  During the years P continued working, P's
former spouse was entitled under California community
property law to receive a monthly payment from P equal
to one-half of the pension benefit which P had earned
during their marriage and which P would have received
if he had retired on the date of their divorce.

        <u>Held</u>, P's gross income from his continued
employment, which he received in lieu of retirement
benefits, does not include the amount of payments to
which his former spouse was entitled under California
community property law on the basis of the pension
earned by P.

John Michael Dunkin, pro se.

Vicken Abajian, for respondent.

COLVIN, Judge:  Respondent determined a deficiency of $8,222 in petitioner's Federal income tax for 2000.  The sole issue for decision is whether petitioner may reduce his gross income by the $25,511 that he was required by California community property law to pay to his former spouse in 2000.  We hold that he may.

Unless otherwise stated, section references are to the Internal Revenue Code as amended and in effect for 2000.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner

Petitioner resided in Long Beach, California, when the petition was filed.

The Superior Court for the County of Los Angeles, California, entered a judgment of divorce for petitioner and his former spouse on August 19, 1997.  As of 1997, petitioner had been employed by the City of Los Angeles for 27 years.

Petitioner participated in a defined benefit pension plan (the pension plan) administered by the Board of Pension Commissioners (the pension board).  He became eligible to receive benefits under the pension plan on May 19, 1989.  The divorce judgment provided in pertinent part as follows:

2.   IDENTIFICATION, VALUATION AND DIVISION OF
     COMMUNITY PROPERTY

     (a) * * * [Petitioner's former spouse] is awarded
the following as her sole and separate property and
shall assume and pay any encumbrances thereon and hold
* * * [petitioner] indemnified therefrom:

             *    *    *    *    *    *    *

     (8) THE DEFINED BENEFIT PLAN:

     (a) One Half of the community interest in all
benefits (including but not limited to service or
disability pension, conditional survivorship rights,
refundable contributions, cost-of-living adjustments)
of * * * [petitioner's] L.A. City Article XVIII/LAPD
Defined Benefit Pension Plan * * *

     (b) The community interest shall be calculated per
Brown Formula (marital period divided by employment
period multiplied by * * * [petitioner's] service
entitlement).

If petitioner had retired on August 19, 1997, his former

spouse would have been entitled to receive, and the pension board

would have paid to her as her community property interest in the

pension plan, $2,072 per month, representing one-half of his

monthly benefit.  Petitioner had not retired as of that date.

Citing In re Marriage of Gillmore, 629 P.2d 1 (Cal. 1981),[1] the superior court ordered petitioner to pay his former spouse $2,072 per month until he retired. The Court ordered as follows:

> (9) * * * [PETITIONER'S FORMER SPOUSE'S] EXERCISE OF "GILLMORE PENSION RIGHTS":
>
> (a) The court finds, upon the stipulation of the parties, that the * * * [petitioner] has been eligible to retire and collect the pension under the DEFINED BENEFIT PLAN described herein above since May 19, 1989 but he has not retired to date; and
>
> (b) That were he to retire as of date of trial, he would have accrued 27.7899 service years and would receive a starting pension benefit of $4,311.30 monthly * * * and * * * [petitioner's former spouse] would be entitled to one half or $2,072 monthly; and
>
> (c) That * * * [petitioner's former spouse] has exercised her "Gillmore Rights" to be paid her said monthly pension interest and therefore is awarded the same and * * * [petitioner] is ordered to pay directly to her $2,072 monthly * * * beginning as of April 1, 1997 and continuing until he retires and the Plan begins direct payment to her pursuant to the award and order made in Par. 2(A)(8) herein. * * * .

---

[1] A nonemployee spouse has the right to be paid the amount to which that spouse would have been entitled if the employee spouse had retired and begun drawing benefits in a pension plan that, on the date of divorce, was fully vested, matured, and drawable but was not paid because the employee spouse continued to work. In re Marriage of Gillmore, 629 P.2d 1 (Cal. 1981). As used in this Opinion, the term "nonemployee spouse" is the spouse with a community property interest in the retirement benefits of the other spouse (the employee spouse). If both spouses have earned rights in retirement plans, each spouse is the "nonemployee spouse" in relation to the retirement rights of the other spouse.

The superior court also ordered that, if petitioner's former spouse dies before petitioner, her benefit will be payable to her beneficiaries.

The superior court ordered petitioner and his former spouse to prepare a California qualified domestic relations order (QDRO) to be signed by the judge and entered in the court's record providing that the pension plan would pay petitioner's former spouse $2,072 per month when petitioner retired.

Petitioner paid his former spouse $25,511 in 2000 as ordered in the divorce judgment.[2]  Petitioner deducted $26,604 as alimony on his 2000 Federal income tax return.[3]

Petitioner retired on September 22, 2002.  After petitioner retired, the pension board separately paid petitioner and his former spouse.[4]

---

[2]  The parties agree that petitioner paid his former spouse $25,511 in 2000.  They do not explain why that amount is more than $2,072 x 12.

[3]  Petitioner concedes that $1,124 that he paid to his former spouse on January 1, 2001, and that he included in the $26,604, is not deductible for 2000.

[4]  Because he worked for 5 years after his divorce, petitioner received a larger benefit than he would have received if he had retired on the date of his divorce.  However, petitioner's former spouse was entitled under California law, and the pension board paid to her, an amount equal to one-half of the benefit petitioner would have received if he had retired on the date of the divorce.  See In re Marriage of Gillmore, supra at 7 n.9.

OPINION

A.   Background and Contentions of the Parties

The parties dispute whether petitioner is taxable on the amount he paid to his former spouse because of her community property rights in his pension.

1.   Principles of California Community Property Law Relevant to This Case

Under California community property law, each spouse has a one-half ownership interest in the community estate, including income earned by both spouses during their marriage.  Cal. Fam. Code sec. 2550 (West 2004).

A pension is deferred compensation for past employment.  In re Marriage of Brown, 544 P.2d 561, 565 (Cal. 1976).  Pension rights are community property, and, as part of a divorce settlement or order, those rights can be distributed either through periodic (e.g., monthly) retirement payments or by lump sum based on the present value of the future benefit.[5]  In re

_____

[5]  Under California law, parties to a divorce may divide community property rights to pension plan benefits in different ways.  First, all pension rights may be awarded to the employee spouse if the nonemployee spouse is compensated with other community property equal in value to the present value of the nonemployee's share.  In re Marriage of Gillmore, supra at 6-7; In re Marriage of Skaden, 566 P.2d 249, 253 (Cal. 1977); In re Marriage of Brown, 544 P.2d 561, 566 (Cal. 1976); Phillipson v. Bd. of Admin., 473 P.2d 765, 774-775 (Cal. 1970).  Second, the employee spouse can pay the other spouse the present value of the nonemployee spouse's share of the pension plan.  In re Marriage of Gillmore, supra.  Third, the employee spouse can pay the other spouse a share of the retirement payments monthly.  Id.
                                                    (continued...)

Marriage of Gillmore, supra at 8; In re Marriage of Brown, supra at 567.  If pension benefits are distributed through periodic payments, the nonemployee spouse may be entitled to up to one-half of each payment; the allocation depends on the percentage of the employee spouse's working years that the parties were married.  In re Marriage of Gillmore, supra at 6; In re Marriage of Brown, supra at 562-563.

In some situations, people may choose not to begin receiving retirement benefits when they are first eligible to do so.  Postdivorce earnings are separate property, not community property.  Cal. Fam. Code sec. 771 (West 2004) (earnings and accumulations of each spouse following date of separation are that spouse's separate property).  Nonetheless, in these situations under California law, a formerly married person is entitled to payments based on the amount of pension benefits to which the employee spouse would have been entitled if the employee spouse had retired when first eligible.  In re Marriage

---

[5](...continued)
Petitioner's retirement plan at issue in this case is a defined benefit plan.  The record contains no evidence that petitioner, his former spouse, or the superior court sought to determine the present value of the former spouse's interest in petitioner's retirement plan.  See Projector, "Valuation of Retirement Benefits in Marriage Dissolutions", 50 L.A. Bar Bull. No. 6, at 229 (1975) (valuation of a defined benefit plan includes an estimate of the value of the pension measured at the future retirement date, discounting for the time value of money, mortality, and vesting) (cited in In re Marriage of Gillmore, supra at 4 n.4).

of Gillmore, supra at 6.  This rule is intended to prevent the employee spouse from unilaterally depriving the nonemployee spouse of his or her interest in the retirement benefits by transmuting community property into separate property.  In re Marriage of Gillmore, 629 P.2d at 4; In re Marriage of Stenquist, 582 P.2d 96, 98 (Cal. 1978); In re Marriage of Fithian, 517 P.2d 449, 455 (Cal. 1974).[6]  Thus, California law protects the substance of the former spouse's community property rights even though the employee spouse chooses to receive payments which are not community property, such as income earned after the divorce, instead of retirement benefits.  See In re Marriage of Gillmore, supra at 6.[7]

---

[6] Similarly, employee spouses who are eligible to receive either retirement or disability payments may elect to receive disability payments.  Disability payments are not community property under California law.  In re Marriage of Jones, 531 P.2d 420, 425 (1975).  However, in these situations, under California law a formerly married person is entitled to payments based on the amount of pension benefits to which the employee spouse would have been entitled if the employee spouse had not elected to receive disability payments.  In re Marriage of Stenquist, 582 P.2d 96, 100-102 (Cal. 1978).

[7]  In In re Marriage of Gillmore, 629 P.2d at 6 n.7 (quoting Note, "In re Marriage of Stenquist: Tracing the Community Interest in Pension Rights Altered by Spousal Election", 67 Cal. L. Rev. 856, 879 (1979)), the California Supreme Court included the following analysis:

"[F]rom an economist's perspective, the employee spouse's compensation for continued employment is not the full amount of his paycheck.  Rather, his compensation is only that amount above the pension benefits that he will not receive while he continues
(continued...)

2.  Federal Taxation of Income Paid Pursuant to Rights in
    Community Property

State law determines the rights of persons to income and property, and Federal law governs the Federal taxation of those rights. United States v. Natl. Bank of Commerce, 472 U.S. 713, 722 (1985); United States v. Rodgers, 461 U.S. 677, 683 (1983); Aquilino v. United States, 363 U.S. 509, 513 (1960). Income is taxed to the person who has the right to receive it. Poe v. Seaborn, 282 U.S. 101, 111-112 (1930); Lucas v. Earl, 281 U.S. 111, 114 (1930). In Poe v. Seaborn, the U.S. Supreme Court held that, under community property law in the State of Washington, each taxpayer spouse owned an undivided one-half interest in the income earned by each spouse during the marriage and was liable for income tax on that one-half.[8]

---

[7](...continued)
working. For example, in the matured pension situation, if the employee can receive retirement pay in the amount of X dollars without working, then his actual compensation for services rendered is not the amount of his paycheck, Y dollars, but Y minus X dollars. This is nothing more than a reapplication of the 'benefits foregone' formula of Stenquist (21 Cal.3d. 779, 148 Cal.Rptr. 9, 582 P.2d 96). [Fn. omitted.] Therefore, rather than penalizing the spouse for not retiring, the contrary is true--the community is being penalized because it is forced to subsidize the employee spouse's salary, which becomes his separate property." * * *

[8] Poe v. Seaborn, 282 U.S. 101 (1930), gave married taxpayers in community property States the tax advantage of income splitting. In 1948, to reduce the disparity between community property and noncommunity property States, Congress

(continued...)

We followed Poe v. Seaborn in Eatinger v. Commissioner, T.C. Memo. 1990-310. The taxpayer in Eatinger was the nonemployee former spouse. The employee spouse retired in 1972 and was receiving monthly pension payments which were community property. The Eatingers divorced in 1977. The divorce court ordered the employee spouse to pay his former spouse an amount equal to her community property share of his monthly pension benefits. We held that the payments that a former spouse was entitled to receive because of her rights under community property law were taxable to the former spouse. Similarly, the nonemployee former spouse is liable for tax on his or her community property share of a lump-sum distribution from a qualified pension plan. Powell v. Commissioner, 101 T.C. 489, 498 (1993).

3.  Respondent's Contentions

Respondent contends: (a) Petitioner is taxable on the payments he made to his former spouse on account of her community property rights in his pension because, unlike the spouse in Eatinger, petitioner was not yet receiving pension benefits; (b) not taxing petitioner on payments he was required by California community property law to make to his former spouse would be

---

[8](...continued)
authorized married taxpayers to file joint Federal income tax returns. Revenue Act of 1948, ch. 168, 62 Stat. 110, 115. However, Poe v. Seaborn has not been overturned by Congress or overruled by the U.S. Supreme Court.

contrary to the assignment of income doctrine; and (c) the result in this case is determined by section 402 and the QDRO rules.

B. <u>Whether the Fact That Petitioner Was Not Yet Receiving Pension Benefits Means He Is Taxable on Payments He Made to His Former Spouse on Account of Her Community Property Rights in His Pension</u>

Respondent contends that the fact that petitioner was not yet receiving pension benefits means he is taxable on payments he made to his former spouse on account of her community property rights in his pension.

The employee spouse in <u>Eatinger v. Commissioner</u>, <u>supra</u>, was ordered to pay to his former spouse an amount equal to one-half of his pension payments because his pension was community property. See <u>In re Marriage of Brown</u>, 544 P.2d 561 (Cal. 1976). That was also why petitioner was ordered to pay an amount equal to one-half of the pension he would have received if he had not elected to continue working past the date of his divorce. See <u>In re Marriage of Gillmore</u>, <u>supra</u> at 6.

Respondent contends that cases relating to the taxation of community property, such as <u>Poe v. Seaborn</u> and <u>Eatinger</u>, do not apply here because petitioner's postdivorce wages are not community property. We disagree. Respondent's argument overlooks the fact that California community property rights do not depend on the form of the payments received by the employee spouse or the source of the payments to the former, nonemployee spouse. <u>In re Marriage of Gillmore</u>, <u>supra</u>; <u>In re Marriage of</u>

Stenquist, supra. Just as the rights of divorced spouses under California law do not depend on the form of the payments to the employee spouse, neither should the Federal taxation of those rights. Generally speaking, money is fungible. See United States v. Sperry Corp., 493 U.S. 52, 62 n.9 (1989); Berry Petroleum Co. v. Commissioner, 104 T.C. 584, 643 n.37 (1995), affd. without published opinion 142 F.3d 442 (9th Cir. 1998). Because of the fungibility of money, we did not know whether the employee spouse in Eatinger paid the nonemployee spouse from his retirement benefits or from other funds. Similarly, whether petitioner paid his former spouse from current wages or retirement benefits is not determinative here. See Taylor v. Campbell, 335 F.2d 841, 844-845 (5th Cir. 1964) (the source of an otherwise deductible payment will not affect its deductibility when proceeds from a property division in a divorce are used to pay alimony); Benedict v. Commissioner, 82 T.C. 573, 579 (1984) (quoting and applying Taylor v. Campbell, supra).

C.  Whether Petitioner's Position Violates Assignment of Income Principles

Respondent contends that the $25,511 petitioner paid to his former spouse was an assignment of income that was taxable to petitioner under Lucas v. Earl, supra. In Lucas v. Earl, supra at 114-115, the U.S. Supreme Court disregarded for Federal income tax purposes an agreement between a husband and wife to share equally in the income each received. A holding for the taxpayers

would have meant that they, by contract, would have had the benefits of joint filing and income splitting, features not added to the Federal income tax until 1948. See Revenue Act of 1948, ch. 168, 62 Stat. 115.

Respondent's reliance on Lucas v. Earl, 281 U.S. 111 (1930), is misplaced. In that case, the Supreme Court decided how the assignment of income doctrine applies to a contract between husband and wife but did not discuss how the assignment of income doctrine applies to community property.[9] That issue was decided in Poe v. Seaborn, 282 U.S. 101 (1930), in which, as stated above, under community property law in the State of Washington, each spouse was taxed on one-half of his or her own income and one-half of the income of the other spouse. In Poe v. Seaborn, the U.S. Supreme Court distinguished Lucas v. Earl on grounds that the earnings of a taxpayer in a community property State were the property of the community and not of the taxpayer providing services to earn income. Because the nonemployee spouse was entitled to the payments at issue here under community

---

[9] The taxpayers in Lucas v. Earl, 281 U.S. 111 (1930), lived in California. In 1920-21, spouses in California did not have a vested present interest in all property of the community. Community Property--Income and Estate Taxes, 32 Op. Att'y Gen. 435, 456 (1921); Donworth, "Federal Taxation of Community Incomes--The Recent History of Pending Questions", 4 Wash. L. Rev. 145, 148 n.40 (1929). In Lucas v. Earl, the Supreme Court analyzed the issue based on contract law, not community property law.

property law, <u>Poe v. Seaborn</u>, <u>supra</u>, applies, not <u>Lucas v. Earl</u>, <u>supra</u>.

D.    <u>Whether Section 402 or QDRO Rules Govern This Case</u>

Respondent argues that the payments are tax free to petitioner's former spouse under section 402(a)[10] (and, we assume, contends inferentially that they are taxable to petitioner) because the payments were not distributions from her former husband's pension plan.[11]  Section 402(a) provides how distributions made from a qualified trust under a qualified pension plan are taxed.  No distributions from a qualified trust were made in this case.  Thus, contrary to respondent's argument, by its terms section 402 does not apply to this case.[12]

We did not discuss section 402 in <u>Eatinger v. Commissioner</u>, T.C. Memo. 1990-310, when we held that the nonemployee spouse was

---

[10]  Sec. 402(a) provides:

SEC. 402(a). Taxability of Beneficiary of Exempt Trust.--

Except as otherwise provided in this section, any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72 (relating to annuities).

[11] Because petitioner's former spouse is not a party in this case, we do not consider here how she might be taxed on the payments at issue.

[12] Respondent does not cite or rely on <u>Karem v. Commissioner</u>, 100 T.C. 521 (1993).  Unlike the instant case, <u>Karem</u> involved taxation of a distribution from a pension plan.

taxable on her share of retirement benefits.[13]  Instead, we based our decision on the former spouse's ownership of retirement rights under California community property law and the principle that property is taxed to its owner.  See Poe v. Seaborn, supra. We believe the same approach is appropriate here.

An order to a retirement plan to pay an early retirement benefit (i.e., a retirement benefit payable to the nonemployee spouse before the employee spouse retires) can be a QDRO.  Sec. 414(p)(4).  Respondent contends that petitioner could have obtained a QDRO providing an early retirement benefit to his former spouse under which she would have been taxable on the payments at issue.

Because domestic relations are preeminently matters of State law, Congress rarely intends to displace State authority in this area.  Mansell v. Mansell, 490 U.S. 581, 587 (1989).  Even if petitioner could have obtained an early retirement QDRO, respondent does not contend that Federal law prohibits the arrangement under California community property law that was made in this case; i.e., petitioner paid his former spouse the benefit

---

[13]  The pension plan in Eatinger v. Commissioner, T.C. Memo. 1990-310, was not a qualified trust because it was a Government plan, and, at that time, Government retirement plans were not qualified plans.  Karem v. Commissioner, supra at 526 n.4; see H. Rept. 101-247, 1443 (1989).

to which she would have been entitled if he had retired.[14]  Since use of an early retirement QDRO was not required here, we see no "clear and unequivocal" congressional intent for Federal law to supplant State law, see Mansell v. Mansell, supra, and no reason to avoid taxation of petitioner according to his rights and obligations under California community property law.

E.    Conclusion

We conclude that petitioner may reduce his gross income by $25,511 for 2000.

Decision will be

entered for petitioner.

---

[14]  Cf. Ablamis v. Roper, 937 F.2d 1450, 1459-1460 (9th Cir. 1991) (Employee Retirement Income Security Act of 1974, Pub. L. 93-406, sec. 1056(d), 88 Stat. 829, preempted a predeceasing nonemployee spouse's right under California community property law to leave her interest in her former husband's pension to a third person in her will).  The U.S. Court of Appeals in Ablamis did not consider the Federal tax consequences of application of community property law or hold that community property rights should be disregarded in applying Federal tax law.