**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COMMISSIONER OF INTERNAL
REVENUE,
  *Petitioner-Appellant,*

v.

JOHN MICHAEL DUNKIN,
  *Respondent-Appellee.*

No. 05-76004

Tax Ct. No.
4448-03

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
June 13, 2007—Pasadena, California

Filed August 31, 2007

Before: Dorothy W. Nelson, Stephen Reinhardt, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge D.W. Nelson;
Dissent by Judge Reinhardt

## COUNSEL

Deborah K. Snyder and Richard Farber, United States Department of Justice, Tax Division, Washington D.C., for the appellant.

John M. Dunkin, Ladera Ranch, California, pro se.

## OPINION

D.W. NELSON, Senior Circuit Judge:

The Commissioner of Internal Revenue ("Commissioner") appeals from a decision of the United States Tax Court allowing John Michael Dunkin ("John" or "appellant") to reduce his taxable income for the 2000 tax year by $25,511—the amount he paid his former spouse Julie Green ("Julie") incident to a division of community property assets upon marital dissolution. In 1997, a California Superior Court ("divorce court") awarded Julie one half of the marital community's interest in pension benefits provided by John's employer. However, because John chose to continue working and did not terminate his participation in the plan following divorce, the pension administrator did not begin making distributions

straight away. California courts have recognized that an employee spouse like John might attempt to defeat a non-employee spouse's community interest in a pension by continuing to work. As a result, under California law, Julie was not required to await John's actual retirement and instead demanded monthly payments in lieu of her community pension interest pursuant to *In re Marriage of Gillmore*, 629 P.2d 1 (Cal. 1981). In 2000, John used $25,511 of the wages he earned by continuing to work to satisfy Julie's "*Gillmore* rights." We must decide whether John was entitled to reduce his taxable income by the amount paid over to Julie in 2000.[1] We conclude that he was not and reverse the Tax Court's contrary holding.

## BACKGROUND

John Dunkin and his former wife Julie married on August 26, 1967, separated on February 19, 1996, and were divorced on August 19, 1997. For most of this period and continuing until his retirement in 2002, John was employed by the Los Angeles Police Department ("L.A.P.D."). As part of his L.A.P.D. compensation package, John participated in a defined benefit plan administered by the Los Angeles Board of Pension Commissioners ("pension board"). Under the plan, upon retirement, John was entitled to receive monthly payments for life, based on the length of his service, his rank, and his monthly salary. As of May 19, 1989, John's pension rights were fully vested and mature.[2] The pension benefits earned

---

[1] The record does not reveal whether Julie reported the $25,511 she received in 2000 as income.

[2] Pension rights are "vested" where they would survive the discharge or voluntary termination of the employee. *In re Marriage of Bergman*, 214 Cal. Rptr. 661, 664 n.4 (Cal. Ct. App. 1985). Such rights are "mature" where "all the conditions precedent to the payment of . . . benefits have taken place or are within the control of the employee." *Gillmore*, 629 P. 2d at 3 n.2 (quotations and citations omitted). Because John had accrued twenty years of service in 1989, his rights were mature, i.e., the only condition precedent to his receiving benefits was his actual retirement—an event entirely within his control.

during marriage were community property. *Gillmore*, 629 P.2d at 3; *In re Marriage of Benson*, 116 P.3d 1152, 1156 (Cal. 2005) (explaining that pension benefits represent "deferred compensation for work . . . performed during the marriage").

Under California law, upon the dissolution of a marriage, a divorce court is required to divide the community estate equally. Cal. Fam. Code § 2550. In addition, the court may order spousal support, commonly referred to as "alimony." Cal. Fam. Code § 4330(a). In this case, the divorce court explicitly declined to order spousal support.

As part of the division of community property, the divorce court awarded one half of the community's interest in the pension to each spouse. A California court may value and distribute a community's interest in a pension in a number of different ways. A court may, for example, award the employee spouse the full pension and award an offsetting lump-sum representing one half of the present value of the pension to the non-employee spouse (usually out of other community assets if the estate is sufficiently large). *Gillmore*, 629 P.2d at 7; *In re Marriage of Skaden*, 566 P.2d 249, 253-54 (Cal. 1977); *Bergman*, 214 Cal. Rptr. at 664-65; *In re Marriage of Shattuck*, 184 Cal. Rptr. 698, 699 (Cal. Ct. App. 1982) (noting that this represents the "preferable mode of division"(internal citation omitted)). Alternatively, a court may decline to calculate the present value of the pension and simply order a division of each payment as it comes due. *Gillmore*, 629 P.2d at 7; *In re Marriage of Stenquist*, 582 P.2d 96, 105 (Cal. 1978).

Of course, pension payments typically do not come due until the employee spouse has retired. Further, the employee spouse alone may decide whether and when to retire. In *Gillmore*, the California Supreme Court recognized that an employee's ability to unilaterally delay retirement, and thereby deprive the non-employee of his or her interest in a

pension, presented an opportunity for abuse. 629 P.2d at 4. As a result, in California, if an employee spouse chooses to continue to work following divorce, the non-employee spouse may demand reimbursement for his or her share of the benefits that would have been forthcoming if the employee spouse had retired. *Id*. at 6-7.

In this case, the divorce court did not calculate the present value of the pension and, instead, awarded an in-kind division of benefits. The court calculated the community's interest as $4,123.43 per month—the benefit that would have been forthcoming had John retired on the date of trial—and Julie's share as $2,072. Julie exercised her rights under *Gillmore*, and John was ordered to reimburse his ex-spouse for the amounts she lost as a result of his decision to continue working. The court also ordered the pension board to make similar payments to Julie following John's retirement. Because these payments were related to Julie's community property interests and were not alimony, there was no provision for their cessation upon her death or remarriage. Instead, John was required to make payments until he retired, and the pension board was ordered to make payments for as long as benefits were payable, even if Julie died in the interim, in which case benefits would flow to her designated beneficiaries.

In 2000, John paid $25,511 to Julie pursuant to the divorce court's order. While he was free to use any property at his disposal, he funded the payments out of the wages he earned in exchange for his continued employment with the L.A.P.D. John claimed this amount as deductible alimony on his federal income tax return and the IRS disallowed the deduction. He then sought and was granted relief by the United States Tax Court which allowed him to "reduce" his income by $25,511 without specifying whether appellant was entitled to exclude a portion of his wages from gross income or deduct, as alimony or otherwise, the payments made to his ex-spouse. *Dunkin v. Comm'r*, 124 T.C. 180 (T.C. 2005).

## DISCUSSION

### I. Jurisdiction and Standard of Review

We have jurisdiction over the final judgment of the United States Tax Court under I.R.C. § 7482(a). We review decisions of the tax court on the same basis as we would any decision rendered by a district court in a civil bench trial. *Condor Intern., Inc. v. Comm'r*, 78 F.3d 1355, 1358 (9th Cir. 1996). Therefore, we review the court's factual findings for clear error, its discretionary rulings for abuse of discretion, and its conclusions of law de novo. *Id.*

Under the Internal Revenue Code, income taxes are assessed based on a person's "taxable income," defined as gross income less deductions allowed by the Code. I.R.C. §§ 1, 63(a). Broadly speaking, the question in this case is whether John was entitled to exclude from gross income the $25,511 in wages that he paid over to Julie in 2000 or, if not, whether he was entitled to deduct the payments as alimony.

### II. Appellant's Gross Income for 2000 Included the Wages that were Paid Over to his Ex-Spouse

#### A. General Principles

The first step in arriving at taxable income is to determine an individual's "gross income." Although the term is defined broadly (and somewhat circularly) to include "all income from whatever source derived," I.R.C. § 61(a), certain accessions to wealth that would ordinarily constitute income may be excluded by statute or other operation of law. *See* I.R.C. §§ 101-140 (listing items specifically excluded from gross income). However, given the clear Congressional intent to "exert . . . the full measure of its taxing power," *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955) (internal citations and quotation marks omitted), exclusions from gross

income are construed narrowly in favor of taxation. *Merkel v. Comm'r*, 192 F.3d 844, 848 (9th Cir. 1999).

**[1]** There is no statutory provision that could plausibly be said to exclude from gross income the accessions to wealth at issue in this case, i.e., the wages paid by the L.A.P.D. to John during the year 2000. Indeed, wages received in exchange for labor are the very paradigm of income. I.R.C. § 61(a)(1). Although John owed a debt to Julie which he satisfied out of his monthly wages, standing alone, this is not a reason to exclude the wages from his gross income. *Alex v. Comm'r*, 628 F.2d 1222, 1224 (9th Cir. 1980) ("It is not true that one's paycheck is . . . excludable from gross income whenever it is 'spoken for' by creditors.").

## B.    Attribution of Income in the Marital Context

Although the mere fact that John used a portion of his wages to satisfy a debt does not justify any exclusions from his income, the fact that the payments were made to his ex-spouse under the direction of a divorce court makes this case seem difficult. Federal tax is imposed on the income "of" individuals. I.R.C. § 1. In *Poe v. Seaborn*, the Supreme Court, noting that " 'of' denotes ownership," 282 U.S. 101, 109 (1930), held that where the community property laws of a state create in married persons "vested property right[s] in the . . . income of the community, including salaries or wages of either husband or wife, or both," *id.* at 111, each has taxable income in the amount of one-half of such inflows. *See also, e.g.*, *United States v. Mitchell*, 403 U.S. 190, 197 (1971) ("[W]ith respect to community income . . . federal income tax liability follows ownership. In the determination of ownership, state law controls." (citations omitted)); *Leonard v. Comm'r*, 76 T.C.M. (CCH) 255 (T.C. 1998) ("Community property income is attributable 50 percent to each spouse."); *but see, e.g.*, I.R.C. §§ 879, 1402(a)(5) (disregarding community property for some purposes).

Under *Seaborn* and its progeny, if a portion of the wages John earned in 2000 was community property under California law, then the correct tax treatment would be to attribute half of that income to John and half to Julie. Put another way, it would be correct to exclude from John's gross income the fifty percent paid over to his ex-spouse. In the instant case the tax court seems to have reasoned that because John's obligation arose out of an exercise of Julie's *Gillmore* rights, the funds at issue belonged to Julie and not John under California community property law and were therefore not income to John under the logic of *Seaborn*. 124 T.C. at 185-86.

**[2]** Unfortunately for John, the tax court was wrong. Under California law, "[a]fter entry of a judgment of legal separation of the parties, the earnings or accumulations of each party are the separate property of the party acquiring the earnings or accumulations." Cal. Fam. Code § 772. The wages at issue in this case were clearly "earnings or accumulations" acquired by John after legal separation.

In *Gillmore*, the California Supreme Court did not create a new species of community property consisting of those post-divorce wages earned by an employee spouse that displace a stream of pension income that would have flowed to the community had the employee retired.[3] Instead, the Court noted

---

[3]In dicta the Court noted that "[o]ne commentator argues that when an employee who is eligible to retire chooses to continue working, part of his [post-divorce] salary is actually attributable to community effort. '(F)rom an economist's perspective, the employee spouse's compensation for continued employment is not the full amount of his paycheck. Rather, his compensation is only that amount above the pension benefits that he will not receive while he continues working.' " 629 P.2d at 6 n.7 (quoting *Note, In re Marriage of Stenquist: Tracing the Community Interest in Pension Rights Altered by Spousal Election*, 67 Cal. L. Rev. 856, 879 (1979)). The tax court quoted from this footnote while omitting the "one commentator argues that" language, leaving the impression that the California Supreme Court had adopted this point of view as part of the *Gillmore* holding. 124 T.C. at 184 n.7. However, it is manifest that the California

that when an employee spouse facing a *Gillmore* election chooses to continue working, he may "use *separate property* to reimburse" the non-employee spouse. 629 P.2d at 6 (emphasis added). The Court continued,

> [the employee spouse's] situation is not unlike that faced by a couple ordered to divide a house that they own as community property. If one of the spouses chooses to keep the house, he or she is free to use separate property to purchase the other's interest. Here, [the employee spouse] must divide his retirement benefits with [the non-employee spouse]. If [the employee spouse] does not wish to retire, he must pay . . . an amount equivalent to [the non-employee spouse's] interest.

*Id.*

Neither *Eatinger v. Commissioner*, 59 T.C.M. (CCH) 954 (T.C. 1990), nor *Powell v. Commissioner*, 101 T.C. 489 (T.C. 1993), provides any support for John's position. Both cases addressed the tax consequences of actual distributions of pension benefits in the context of community property division. Both held that a non-employee spouse's share of such distri-

---

Supreme Court was merely reporting the views of a commentator and not establishing that post-divorce wages that displace a pension are themselves community property. Indeed, to do so would fly in the face of California Family Code § 772. Further, the main text of the *Gillmore* opinion makes clear that an employee spouse uses his or her separate property to satisfy a non-employee spouse's *Gillmore* election where the employee continues to work and hands over some of his or her wages. 629 P.2d at 6; *see also Shattuck*, 184 Cal. Rptr. at 700 ("The [*Gillmore*] court did *not* create a fiction that [an employee spouse] be deemed to have received his monthly pension payments, and was therefore bound to pay over [the non-employee's share]. *Gillmore* says no more than that: 'If he does not wish to retire, he must [upon dissolution of the marriage and her demand] pay her an amount *equivalent* to her interest.' " (quoting *Gillmore*, 629 P.2d at 6)).

butions would be taxable to him or her notwithstanding the fact that the payments were first distributed to the employee spouse who then, acting as a conduit, turned the funds over to the non-employee. *See Powell*, 101 T.C. at 497-99 (explaining that because distributions from a pension plan are community property under California law an employee spouse would be deemed to "receive[ ] the distribution[s] . . . on behalf of the community [so] that his later payment to [his ex-spouse would be] a transfer to her of funds that at all times belonged to her").

*Eatinger* and *Powell* are readily distinguishable. There is no question that under California law, actual distributions of pension benefits earned during marriage are community property. It follows under *Seaborn* that such distributions are taxable to the spouses in proportion to their community property shares. In this case, however, the pension board made no distributions whatsoever in the year 2000. Rather, John made the choice to continue working and made the additional choice to satisfy Julie's *Gillmore* demand for reimbursement out of his wages. Because those wages were unquestionably John's separate property under California law, *Seaborn*, *Eatinger*, and *Powell* do not apply.[4]

[3] We hold that appellant was not entitled to exclude from his gross income any of the wages that he used to satisfy his ex-spouse's demand for compensation under *Gillmore*.

---

[4]The tax court's discussion of the fungibility of money, 124 T.C. at 186-87, is beside the point. Although the source of funds used to pay an otherwise *deductible expense* may be irrelevant for federal income tax purposes, none of the payments at issue in this case was deductible under any provision of the code. *See* Section III *infra*. In contrast, the attribution of income between spouses under *Seaborn* depends entirely on the source and character of income under state law.

### III. Appellant was not Entitled to Claim a Deduction for the Amounts Paid to his Former Spouse

The next step in determining taxable income is to subtract certain outlays that are deemed deductible under the Code. "Deductions . . . are a matter of legislative grace and exist only by virtue of specific legislation." *Max Sobel Wholesale Liquors v. Comm'r*, 630 F.2d 670, 671 (9th Cir. 1980). The only deduction that might plausibly apply to the outlays in this case is the deduction for alimony payments under I.R.C. § 215.

Under § 215, a taxpayer may deduct an amount equivalent to payments made during the tax year that would be included in the recipient's gross income under I.R.C. § 71(b). Section 71(b) defines as alimony only those payments made (1) in cash, (2) under a divorce or separation instrument that does not designate the payments as non-alimony, (3) to a person who is not a member of the payor's household, and (4) where there is "no liability to make any such payment for any period after the death of the payee spouse." I.R.C. § 71(b).

**[4]** In this case, the divorce court declined to award alimony. Further, the court unambiguously required John to make payments for as long as he was employed by the L.A.P.D. even if Julie died before his retirement. Because John's liability was not conditioned on Julie's survival, the payments were not "alimony" within the meaning of § 71(b).

### IV. Conclusion

The wages earned in exchange for John's continued employment in the year 2000 were clearly income under the Internal Revenue Code. That John owed money to a creditor —in this case his ex-spouse—does not justify excluding any amount of his wages from income. Because California community property law does not denominate any portion of John's post-divorce wages as community property, *Seaborn*

and the cases applying its reasoning do not apply. Finally, because John's liability was not conditioned on Julie's survival, the payments were not deductible as alimony.

**REVERSED.**

---

REINHARDT, Circuit Judge, dissenting:

The majority passes over the existence of a significant ambiguity regarding an issue of California state law that has not been addressed by the state's highest court. The question is whether a portion of a divorced employee's wages should be treated as community property when it is used solely for the payment of an ex-spouse's court ordered pension benefits that are community property; in such cases, the former spouse would have received the amount in question as pension benefits (i.e. community property) if her ex-husband had retired at the time he became eligible to do so. Alternatively, the amount of wages that is paid over to the ex-wife as pension benefits could be considered to be exclusively the husband's wages and he would have to pay full taxes on that income even though he neither uses nor benefits from it. The majority chooses the latter option. I respectfully dissent. I would certify the question of how to treat the money involved under California law to the California Supreme Court.

The majority opinion imposes negative tax consequences on a police officer who chooses to work past retirement eligibility age and thus to defer collection of his pension. It requires him to pay full income taxes on the part of his salary that he pays over to his former wife as her community interest in his pension benefits — a result that defies reason, not to mention fairness. If the payment were considered to be what it actually is, a distribution of the ex-wife's interest in the pension benefits, the husband would not have to pay any taxes on the amount in question. If the question were certified, I think

there is a reasonable chance that the California Supreme Court would not decide it the way the majority does. All the California court need do in order to achieve an equitable result is to declare as a matter of state law what is the fact — that in circumstances such as those in which Officer Dunkin finds himself, the part of his salary that he receives and then pays to his ex-wife as reimbursement of the share of pension benefits to which she is entitled under the California court order constitutes the receipt and payment of her interest in community benefits.

## I.

In 2000, John Dunkin paid his ex-wife $25,511, her share of the annual pension benefits he would have received if he had not decided to continue serving the Los Angeles Police Department beyond his retirement age. He did so because his former wife elected immediate payment of her share of those benefits (a "*Gillmore* election"). No California Supreme Court case addresses the question whether the portion of his salary that an employee devotes exclusively to compensating his former spouse for her share of his pension benefits that she would directly receive as community property were he retired should itself be treated as community property. An analysis of several California court of appeal decisions discussing *Gillmore* elections reveals the considerable ambiguity surrounding the question.

As support for its position, the majority points to the California Supreme Court's statement that when an employee facing a *Gillmore* election continues working "he may use separate property to reimburse" the non-employee spouse. *Gillmore*, 629 P.2d at 6. This statement itself does not decide the issue, and another statement in the same opinion creates uncertainty. The *Gillmore* court acknowledged in a footnote the argument that the portion of an employee's salary that he uses to compensate his former spouse for her share of the pension benefits should be considered community property and

not part of his separate income. 629 P.2d at 6 n.7 (citing *Note, In re Marriage of Stenquist: Tracing the Community Interest in Pension Rights Altered by Spousal Election*, 67 Cal. L. Rev. 856, 879 (1979)). The majority is correct in saying that the *Gillmore* court did not adopt this analysis, but the court did not reject it either. Rather, the court stated that it was not necessary to reach the question and left open the possibility that such a rule could be established in the future.

Subsequent cases in the California court of appeal create additional uncertainty. In *In re Marriage of Shattuck*, the court found that the *Gillmore* court did not create the rule that the employee "be deemed to have received his monthly pension payments, and was therefore bound to pay over [his spouse's] community property share of them." 134 Cal. App. 3d 683, 700 (Ct. App. 1982). More than ten years later, another California court asserted that such a rule had been adopted in other cases when calculating payments owed to former spouses. *Nice v. Nice*, 230 Cal. App. 3d 444, 450 n.2 (Ct. App. 1991) (citing *Marriage of Scott*, 156 Cal. App. 3d, 251, 253 (Ct. App. 1984) (holding that the non-employee spouse is entitled to the benefits that she would have received "had [her former husband] actually retired on the date she elected to receive her interest"); *In re Marriage of Jacobson*, 161 Cal. App. 3d 465, 475 (Cal. Ct. App. 1984) (holding that a present election payment was properly calculated as though the employee spouse retired at the time of trial and the non-employee spouse must forego future appreciation in the pension's value); *In re Marriage of Castle*, 180 Cal. App. 3d 206, 210-11, 216-17 (Cal. Ct. App. 1986) (holding that when a non-employee spouse elects a present benefit, her payment is to be calculated as though the employee spouse retired at the time of trial)). If courts create the rule that the pension is distributed as community property when calculating payments, there is no reason to think that they would not use the same principle to determine that the portion that is to be used to satisfy the pension interest is distributed as community property as well.

Because of the uncertainty in the law, and because federal courts traditionally defer to the states on questions of family law, *see In re Marriage of Castle*, 180 Cal. App. 3d 206, 210-11, 213 (Cal. Ct. App. 1986), it is appropriate to certify this question to the California Supreme Court.

## II.

The majority's approach places the employee former spouse in an unfortunate position. If he elects to retire instead of continuing to serve the Los Angeles police department, he will not have to pay taxes on income he does not receive. *See Scott*, 156 Cal. App. 3d at 253. If he elects to continue to work, however, he will. At a time when the federal government is encouraging postponing retirement due to a looming Social Security shortfall, and police forces nationwide are facing officer shortages as officers retire at a younger and younger age and take (or divide) their pension benefits and go off to obtain higher paying jobs in private industry, the majority adopts a rule that discourages divorced officers (and there are many) from continuing to serve the Los Angeles and other police departments. I would hope that the California Supreme Court would not create such perverse incentives if it were to decide the question.

Because this case presents a question of first impression that falls squarely in the realm of state law in a subject area in which federal courts defer to state court decisions, I believe that we should certify the question to the California Supreme Court. Certainly, it could not arrive at a less fair and reasonable decision. Therefore I respectfully dissent.