T.C. Memo. 2019-54

UNITED STATES TAX COURT

MARY BUI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20453-16.                    Filed May 21, 2019.

Ronda N. Edgar, for petitioner.

Adam B. Landy, Nancy M. Gilmore, and Thomas R. Mackinson, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent issued a notice of deficiency to petitioner

determining an income tax deficiency for 2011 of $173,058 and an addition to tax

[*2] under section 6651(a)(1) of $66,668.[1]  After concessions, the sole issue remaining for consideration is whether petitioner must include in gross income cancellation of indebtedness of $355,488.  We hold that she may properly exclude $48,151 but must include the remaining $307,337.

### FINDINGS OF FACT

This case was tried on September 10, 2018, in San Francisco, California. The parties have submitted a stipulation of facts and accompanying exhibits, which are incorporated herein by this reference.  When the petition was timely filed, petitioner resided in California.[2]

Petitioner is also known as Nga Thuy Lan Bui.  For 2011 petitioner excluded $355,488 of discharged indebtedness from her gross income and indicated the excluded indebtedness was qualified principal residence

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The petition was received with an illegible postmark on September 19, 2016, five days after the time to file a petition with this Court had expired.  Sec. 301.7502-1(c)(1)(iii)(A), Proced. & Admin. Regs., places on the taxpayer the burden to prove the date an illegible postmark was made.  On March 12, 2019, we issued an order directing petitioner to sustain her burden of establishing that the postmark was timely made.  On March 24, 2019, petitioner responded to our order and supplemented the record with proof of mailing on September 12, 2016. Accordingly, we are satisfied of our jurisdiction to hear this case.

[*3] indebtedness. On June 16, 2016, respondent issued a notice of deficiency to petitioner for 2011 and proposed an adjustment disallowing her entire exclusion of discharged indebtedness income. Respondent now concedes that petitioner was insolvent by $42,852 in 2011.

I.    Residences

A.    Red River Property

On June 1, 1981, petitioner, her former spouse, and three other persons purchased a single-family residence on Red River Way in San Jose, California (Red River property), for $156,500. Petitioner and her former spouse together owned a 25% interest in the Red River property. By grant deed dated October 15, 1985, and recorded January 28, 1986, petitioner and her former spouse purchased the remaining 75% interest in the Red River property for $97,500. By quitclaim deed dated November 14, 2002, and recorded December 12, 2002, petitioner acquired sole ownership in the Red River property. Petitioner legally separated from her former spouse in 2005 or 2006.

Petitioner lived at the Red River property from its acquisition in 1981 through March 14, 2011, and treated it as her primary residence. On March 14, 2011, petitioner relinquished ownership of the Red River property by short sale for

[*4] $485,000.  At that time, the balance of the mortgage on the Red River property was $416,000.

      B.     Cedar Grove Property

On or around June 1, 1988, petitioner and her former spouse purchased a single-family rental home on Cedar Grove Circle in San Jose, California (Cedar Grove property).  By quitclaim deed dated November 14, 2002, and recorded December 12, 2002, petitioner acquired sole ownership in the Cedar Grove property.  After petitioner sold the Red River property in March 2011, she moved into the Cedar Grove property and established it as her new primary residence.

II.    Wells Fargo Lines of Credit

Before 2011 petitioner obtained three home equity lines of credit with Wells Fargo Bank, N.A. (Wells Fargo).  Petitioner executed a deed of trust dated February 14, 2007, and recorded March 12, 2007, securing a $250,000 line of credit for an account ending in 9471 between herself and Wells Fargo with the Red River property listed as collateral (9471 loan).  Petitioner executed a deed of trust dated March 1, 2007, and recorded March 26, 2007, securing a $40,000 line of credit for an account ending in 7231 between herself and Wells Fargo with the Cedar Grove property as collateral (7231 loan).  Petitioner also executed a deed of trust dated March 20, 2007, and recorded April 30, 2007, securing a $101,942 line

[*5] of credit for an account ending in 5371 between herself and Wells Fargo with the Cedar Grove property as collateral (5371 loan).

In 2011 Wells Fargo issued three Forms 1099-C, Cancellation of Debt, to petitioner indicating that the remaining debt associated with the 9471 loan, the 7231 loan, and the 5371 loan had been canceled. On the Forms 1099-C Wells Fargo described the debts as "HEQ Secured Installment Loan" and checked the box indicating petitioner was personally liable for repayment of the debts. Petitioner's canceled Wells Fargo debt for 2011 was as follows:

| Date of Form 1099-C | Amount of canceled debt | Account No. |
| --- | --- | --- |
| Mar. 18, 2011 | $243,299 | 9471 |
| Oct. 28, 2011 | 11,999 | 7231 |
| Oct. 28, 2011 | 100,190 | 5371 |

Petitioner executed at least four additional deeds of trust with Wells Fargo before 2011. In addition, petitioner, with and without her former spouse, executed at least seven deeds of trust between 1986 and 2004 from banking institutions other than Wells Fargo. The indebtedness indicated by these additional deeds of trust was not canceled in 2011.

**[*6]** III.     Home Improvements

Petitioner testified to carrying out a number of home improvement projects before 2011 for the Red River property, but she provided no documentation relating to when or how expenses of these projects were paid.  She did not testify to any home improvement project expenses related to the Cedar Grove property.  Petitioner paid approximately $10,000 for custom drapes to be installed at the Red River property in 2007.  In addition, she spent approximately $12,000 for driveway repair and expansion work at the Red River property in 2008.  The remaining home improvement expenditures petitioner testified to were made before 2007, the year she obtained the Wells Fargo lines of credit.  The associated debts were discharged in 2011.

OPINION

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving the determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, for the presumption of correctness to attach in an unreported income case such as this, the Commissioner must base his deficiency determination on some substantive evidence that the taxpayer received unreported income.  Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.

**[*7]** There is no dispute in this case that petitioner had debt that was forgiven. Section 7491(a) shifts the burden of proof to the Commissioner where the taxpayer has presented credible evidence with respect to any factual issue relevant to ascertaining the correct tax liability of the taxpayer. Section 7491(a) also requires that the taxpayer have substantiated all appropriate items, maintained records as required under the Code, and cooperated with all reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2)(A) and (B). Petitioner has not attempted to argue, and the record does not demonstrate, her compliance with the requirements of section 7491(a); accordingly, the burden remains with petitioner to show respondent's determinations were incorrect.

This is a dispute over whether petitioner had reportable cancellation of indebtedness income that she failed to report on her 2011 tax return. The Code defines income liberally as "all income from whatever source derived". Sec. 61(a). Specifically, income includes any income from the discharge of indebtedness. Sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs. The underlying rationale for the inclusion of canceled debt as income is that the release from a debt obligation the taxpayer would otherwise have to pay frees up assets

**[\*8]** previously offset by the obligation and acts as an accession to wealth--i.e., income.  United States v. Kirby Lumber Co., 284 U.S. 1, 2 (1931).

Generally, when canceled debt creates income, the amount includible in income is equal to the face value of the discharged obligation minus any amount paid in satisfaction of the debt.  Rios v. Commissioner, T.C. Memo. 2012-128, 2012 WL 1537910, at \*4, aff'd, 586 F. App'x 268 (9th Cir. 2014); see Merkel v. Commissioner, 192 F.3d 844, 849 (9th Cir. 1999), aff'g 109 T.C. 463 (1997).  The income is recognized for the year in which the debt is canceled.  Montgomery v. Commissioner, 65 T.C. 511, 520 (1975).

Petitioner argues that although the cancellation of debt generally creates reportable income her canceled debt is excludable.  Some "accessions to wealth that would ordinarily constitute income may be excluded by statute or other operation of law."  Commissioner v. Dunkin, 500 F.3d 1065, 1069 (9th Cir. 2007), rev'g 124 T.C. 180 (2005).  Even so, "given the clear Congressional intent to 'exert \* \* \* the full measure of its taxing power,' \* \* \* exclusions from gross income are construed narrowly in favor of taxation."  Id. (quoting Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955)) (citing Merkel v. Commissioner 192 F.3d at 848).  Petitioner argues two exclusions apply to her cancellation of indebtedness income:  section 108(a)(1)(E), which offers an exclusion when the

**[*9]** canceled debt is "qualified principal residence indebtedness"; and section 108(a)(1)(B), which provides an exclusion where the taxpayer is insolvent. We will examine both exclusions as applied to petitioner.

## I.   Qualified Principal Residence Indebtedness

Section 108(a)(1)(E) provides that gross income does not include amounts which would be includible as cancellation of indebtedness income if "the indebtedness discharged is qualified principal residence indebtedness". Qualified principal residence indebtedness is defined as (1) acquisition indebtedness (2) with respect to the taxpayer's principal residence. Sec. 108(h)(2), (5). Acquisition indebtedness is "incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer" and must be secured by that residence. Sec. 163(h)(3)(B)(i). If only a portion of a discharged loan obligation meets the definition of qualified principal residence indebtedness, only the amount discharged which exceeds the nonqualified principal residence indebtedness is excludable. Sec. 108(h)(4).

Petitioner's primary residence was the Red River property until she sold it in March 2011 and established the Cedar Grove property as her new primary residence. Three of her Wells Fargo lines of credit--the 9471 loan, the 7231 loan, and the 5371 loan--were canceled in 2011. Petitioner does not argue that any of

[*10] these loans, which were obtained in 2007, were used to acquire or construct either the Red River property or the Cedar Grove property, both of which were solely acquired by petitioner in 2002. Petitioner instead argues that funds from these loans were used to substantially improve her primary residence.

Petitioner provided no evidence regarding substantial improvements made to the Cedar Grove property. For the qualified principal residence indebtedness exclusion to apply, the debt must be used to acquire, construct, or substantially improve the taxpayer's primary residence, and that residence must secure the loan. See secs. 108(h)(2), 163(h)(3)(B)(i). Both the 7231 loan and the 5371 loan were secured by the Cedar Grove property. Therefore, because these loans were not used to acquire, construct, or substantially improve the Cedar Grove property, they are not excludable from gross income as qualified principal residence indebtedness.

Petitioner offered testimony on a number of improvements made to the Red River property before she obtained the 9471 loan. These improvements could not have been financed by a loan that had not materialized at the time they were made. Thus, they will be disregarded for purposes of determining whether any portion of the 9471 loan was qualified personal residence indebtedness. Petitioner spent $12,000 on driveway expansion and repair work at the Red River property in

**[\*11]** 2008. We are satisfied from her testimony that this amount was paid with the 9471 loan. Accordingly, the portion of the 9471 loan that was used to finance the driveway project is qualified principal residence indebtedness. Petitioner also testified that she had custom drapes installed at the Red River property in 2007 for $10,000. We do not find that this expense constitutes a substantial improvement to the Red River property, and therefore it is not qualified principal residence indebtedness.

We have determined that $12,000 of the 9471 loan was qualified principal residence indebtedness; however, the amount that petitioner may properly exclude is limited by section 108(h)(4). Section 108(h)(4) provides that where only a portion of a discharged loan is qualified principal residence indebtedness, the amount that may be excluded is only "so much of the amount discharged as exceeds the amount of the loan (as determined immediately before such discharge) which is not qualified principal residence indebtedness." To apply this limitation we must determine how much of the loan was not qualified principal residence indebtedness. The original line of credit was for $250,000. We have determined that $12,000 was qualified principal residence indebtedness; thus $238,000 was not qualified principal residence indebtedness. Therefore, petitioner may exclude only $5,299 of the canceled 9471 loan from her income under the qualified

[*12] principal residence indebtedness exclusion ($243,299 canceled debt minus the $238,000 of the debt that was not qualified principal residence indebtedness).

## II. Insolvency Exclusion

Petitioner argues that even if her cancellation of indebtedness income is not excludable as qualified principal residence indebtedness, it should be excludable because she was insolvent in 2011. Section 108(a)(1)(B) provides an exclusion from gross income of cancellation of indebtedness amounts where the taxpayer is insolvent at the time the discharge occurs. A taxpayer is insolvent by the amount her liabilities exceed the fair market value of her assets, determined immediately before the discharge of indebtedness. Sec. 108(d)(3).

Respondent concedes that petitioner was insolvent by $42,852 and, therefore, admits that amount of cancellation of indebtedness income is excludable. In the case of a taxpayer who qualifies for the insolvency exclusion, the excluded amount cannot exceed the amount by which the taxpayer is insolvent. Sec. 108(a)(3). Petitioner suggests that respondent did not accurately account for her assets and liabilities when calculating her insolvency. However, petitioner stipulated respondent's insolvency calculations and has offered no coherent argument as to why the calculations are in error. Accordingly, petitioner is entitled to an insolvency exclusion for her cancellation of indebtedness income of

**[\*13]** $42,852.  Petitioner may exclude a total of $48,151--representing $42,852 under the insolvency exclusion and $5,299 under the qualified principal residence indebtedness exclusion--of her cancellation of indebtedness income from her gross income.[3]

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

Decision will be entered under

Rule 155.

---

[3]Sec. 108(a)(2)(C) provides that the insolvency exclusion does not apply to any discharge to which the qualified principal residence indebtedness exclusion applies unless the taxpayer elects the insolvency exclusion to apply in lieu of the qualified principal residence indebtedness exclusion.  Petitioner made no such election; however, because three debts were discharged we may apply the insolvency exclusion to the loans not eligible for the qualified principal residence exclusion.